# CHARLESTON.

VACCARO BROTHERS & COMPANY V. JOHN FARRIS *et als.*

Submitted January 16, 1923.   Decided January 23, 1923.

1. SALES—*In Action for Purchase Price of Goods Defendant May Recoup Damages by Reason of Goods Not Conforming to Contract.*

   In an action by the plaintiff for the purchase price of a carload of bananas sold to and accepted by the defendant, the defendant may recoup damages sustained by reason of the bananas not conforming to the contract. (p. 659).

2. SAME—*Title in Goods Passes Upon Delivery to Carrier or Diversion from Original to Purchaser, "Rolling".*

   Where plaintiff sold defendant a carload of bananas f. o. b. New Orleans, and the bananas were of the kind and quality agreed upon and were delivered to the carrier, properly packed and iced for shipment, consigned to the defendant pursuant to contract, title passed upon delivery to the carrier.   And if such sale were made "rolling" f. o. b. New Orleans, that is, while the car was on its journey from New Orleans, by diverting it from the original consignee to the defendant, and the bananas, when diverted, conformed to the contract, title thereto passed to the defendant upon diversion thereof to him. (p. 661).

3. SAME—*Goods Packed for Shipment and Otherwise Conforming to Contract at Buyer's Risk After Delivery to Carrier or Diversion to Buyer.*

   Whether the sale was made f. o. b. New Orleans or "rolling" f. o. b. New Orleans, if the bananas were properly packed and iced for shipment and otherwise conformed to the contract, at the time of delivery to the carrier or at the time of diversion, they were thereafter at the buyer's risk and the seller is not liable for deterioration naturally resulting during transit.   If they were damaged thereafter through the neglect of the carrier, the seller is not responsible therefor. (p. 661).

4. TRIAL—*Trial Court Must Direct Verdict for Plaintiff Where Evidence clearly Insufficient to Support Verdict Returned for Defendant.*

   Where the evidence given on behalf of defendant is so clearly insufficient to support a verdict for him that such verdict, if returned by the jury, must be set aside, and the evi-

dence in support of plaintiff's claim is clear and convincing, it is the duty of the trial court, when so requested, to direct a verdict for the plaintiff.  (p. 663).

(McGINNIS, JUDGE, absent.)

Error to Circuit Court, Kanawha County.

Action by Vaccaro Bros. & Co. against John Farris and others.  Judgment for defendants, and plaintiff brings error.

*Reversed and remanded.*

*Morton, Mohler & Peters,* for plaintiff in error.
*E. L. Stone* and *Horan & Pettigrew,* for defendant in error

MEREDITH, JUDGE:

Plaintiff sued in assumpsit to recover $906.10, with interest from July 17, 1919, being the purchase price of a carload of bananas, with initial icing charge.  Defendants pleaded non-assumpsit and filed notice of recoupment.  The jury returned a verdict in favor of plaintiff for $600; plaintiff made a motion to set aside the verdict and award it a new trial, claiming it was contrary to the law and the evidence, and assigns various other errors.  The motion was overruled and judgment was entered on the verdict.  Plaintiff obtained a writ of error.

To dispose of the assignments of error it is necessary to consider the evidence.  The record shows that the plaintiff was engaged in raising and importing tropical fruits, with offices in New Orleans, and plantations near LaCeiba, Honduras, Central America, between which points it operated a steam-ship line for carrying fruits to New Orleans.  From that point plaintiff marketed its fruits in the United States.  The bananas were assorted according to grade, loaded in refrigerator cars and these cars were placed in trains of about fifty cars each.  After loading, the shipper placed about three tons of ice in the bunkers of each car to preserve the fruit.  This initial icing is charged to the consignee by the shipper.  Thereafter, in case additional icing is necessary, it is done by the carrier, and the icing charge is added to the freight bill, and paid by the consignee.

Plaintiff sold its bananas in car-load lots.  When sold be-

fore leaving New Orleans they were sold f. o. b. New Orleans. Sometimes loaded cars were put in trains going north and were sold while moving. In such cases they were sold "rolling" f. o. b. New Orleans. The defendants, prior to the present sale, had been conducting their main business in Toledo, Ohio, and had been doing business with plaintiff, having made frequent purchases of car-load lots "rolling" f. o. b. New Orleans. They were just opening a branch business at Charleston, West Virginia. They usually bought cars of fruit "rolling" rather than before being loaded, for the reason that they could be bought at a lower price. The sale in this instance was made through J. J. Geis, District Manager for plaintiff. His office was then in Cincinnati, and the agreement was made by telephone, on the 7th, 8th or 9th of July, 1919. It was confirmed by letter to defendants on the 9th. Whether it was made before the car was loaded or while it was "rolling" we think makes little difference. The parties in their evidence practically agree on the terms of the sale. Plaintiff sold defendants a car-load of bananas, quality grass-green, consisting of 425 eight-hand bunches, weighing 23,450 pounds, at $3.80 per hundred weight, f. o. b. New Orleans. They were to be of sound and merchantable quality at time of shipment and were to be properly loaded. They were consigned to defendants at Charleston, West Virginia. If they were sold to defendants after the train-load left New Orleans, then the car was diverted and re-consigned to defendants when the train reached Memphis, but the terms of the contract were the same. Defendants were to pay all charges. Plaintiff sent with the train, out of New Orleans, a messenger, whose duty it was to see that cars going to designated consignees along the route were properly and promptly diverted, that the cars were properly iced by the railroad, and to take the temperatures inside and outside each car, note the condition of the fruit therein, make proper reports of all these matters, and at the end of his division to hand his report to a messenger, who took his place on the train and performed like duties on his division. These messengers were employed and paid by the shipper, except in particular instances the consignee might employ his own messengers.

In the present instance messenger Natale Lafauci accompanied the train from New Orleans to Memphis; there his report was turned over to messenger Chris. Berthelson, who accompanied the train to Louisville, and saw that a car consigned to a purchaser in Huntington, another to a purchaser in Hinton, and the car in controversy consigned to the defendants, were promptly diverted to the Chesapeake & Ohio Railway Company at Louisville; no messenger accompanied these three cars from Louisville, as Berthelson was required to accompany the train to Pittsburgh. Both these messengers made out the report as to these cars, and testify that the fruit was in good green condition at the time the cars left their charge. The car in controversy was Illinois Central No. 59481. Berthelson testifies that when this car was diverted at Louisville, the fruit was in good condition, a few of the bananas turning, the car was properly ventilated, its bunkers were practically full of ice. That was July 10th. That same day, he telegraphed defendants "Diverted 59481, good. Plugs out vents on iron protect." The car left Louisville probably before noon on July 10th and reached South Charleston over the Chesapeake & Ohio Railway at 5:35 P. M., July 12th, making the run in the usual time. Whether it was re-iced during this period does not appear. The terminal yard of the Chesapeake & Ohio Railway is at the southern end of the South Charleston bridge. Freight from that railway for Charleston is brought over that bridge. Illinois Central car No. 59481 was brought over the bridge and delivered to the Kanawha & Michigan Railroad, on whose lines defendants' side-track is situate, at 12:30 Sunday morning, July 13th. That day it was placed on defendants' siding, and defendants examined it about 8:00 o'clock Monday morning, July 14th. They found the bananas were ripe, not spoiled, but unsuitable for their trade, which was that of wholesaling. They notified plaintiff's district manager, Geis, but he declined to agree to any rescission of the contract. On Tuesday morning they sold the bananas for less than the purchase price. They contend that they were compelled to sell them because of instructions from Federal Food Administrator Whitney. They

offered to pay plaintiff the amount received, less freight and icing charges paid by them, but the offer was refused.

Defendants filed notice of recoupment, in effect claiming that the bananas were to be of sound, merchantable and grass-green condition at New Orleans, when shipment was made, in order that they might be in sound, merchantable condition on their arrival in Charleston, and that they were at time of shipment to be properly iced and to continue to be iced until they reached Charleston; that they were not sound, merchantable and grass-green nor properly iced when shipped, and were not kept properly iced until they arrived in Charleston, but that when they arrived they were wholly unfit for defendants' business and hence defendants were damaged to the amount of plaintiff's claim. Defendants had a right to defend on this ground, hence plaintiff has no right to complain on that score. As we view the record, defendants wholly failed to make good their claim but that is no reason for denying them the right to make their defense; plaintiff's objection to defendants' notice of recoupment was properly overruled.

At the trial, after the evidence had been introduced, plaintiff asked for an instruction directing the jury to find for plaintiff for the full purchase price, including the initial icing charge. This instruction was refused. We think it should have been given, and that the verdict rendered is clearly contrary to the law and the evidence. It is clearly shown, by competent evidence, that the bananas were properly loaded at New Orleans, the car was properly iced, and the bananas were of the quality and grade called for by the contract. If the purchase was made before shipment began, plaintiff performed its part of the contract. If the purchase was made "rolling", that is, while the car was in transit, it was made before the car reached Memphis, for it was diverted to defendants at that point, and in that case, plaintiff performed its contract at that point. The evidence shows that when it was diverted the bananas were still grass-green, of sound merchantable quality, and the car in which they were carried was properly iced and ventilated. No examination of

the bananas was made when the car reached South Charleston, Saturday, July 12th, at 5:35 P: M., nor was such examination made between that time and 8:00 o'clock the following Monday morning,—a period of more than 38 hours.   Whether the car was iced after it was taken in charge by the Chesapeake & Ohio Railway Company at Louisville does not appear, but the evidence is undisputed that it had an ample supply of ice in the bunkers when that company received it. There may have been an ample supply when the car reached South Charleston, and the bananas may have been green, sound and merchantable then.   It is clearly shown that it requires more ice to preserve a car-load of bananas in hot weather, such as it was in July in this instance, when the car is standing in a railroad yard or on a siding than it does when the car is moving.   That the bananas were properly loaded and the car properly iced and ventilated at New Orleans we think there can be no doubt.   Nor can there be any doubt that the bananas then were in green, sound and merchantable condition.   All this is clearly proved by witnesses who attended to grading and loading the bananas and icing and ventilating the car there.   Some of these witnesses had had years of experience in that business and their evidence is undisputed, except by the merest inference by way of opinion evidence of witnesses for defense who showed no experience in shipping bananas.   Nor have we any doubt that the bananas were in good green condition when the car was diverted at Memphis.   It was then only 22 hours out of New Orleans.   The car was iced and properly ventilated.   It was re-iced at Paris, Tennessee.   There is not the slightest evidence that plaintiff failed in its duty.   It probably did more than was required.   We see nothing in the contract that required it to send a messenger as far as Louisville.   It was in no wise stipulated by the contract.   After delivery was made to the railroad, the duty of giving proper care to the bananas devolved on it.

But defendants contend in effect that under the contract, plaintiff's duty required it to see that the bananas were delivered to them at their place of business in green, sound merchantable condition.   We do not so interpret the contract.

Plaintiff did not undertake to deliver the bananas at its own risk at Charleston. It was not its duty to see that the railroad continued to re-ice the car after the car started on its journey. If the purchase was made before delivery to the railroad at New Orleans, the title to the bananas passed to defendants upon delivery to the carrier. If the purchase was made while the car was in transit, then the title passed to defendants when the diversion was made at Memphis. In either case, under the contract, if the bananas were green, sound and merchantable when title passed, the risk of their deterioration in transit was on defendant. "If * * * there is a warranty implied because the buyer justifiably relies on the seller to select goods suitable for shipment, the seller does not thereby assume the risk of deterioration in transit; he merely warrants that the goods are fit for shipment at the time and place of sale." Williston, Sales, Sec. 245. This is well illustrated in the leading case of *Bull* v. *Robison,* 10 Exchequer 342, 156 Eng. Rep. 476. The action was by the seller against the buyer for not accepting twenty-five tons of iron. The iron was to be manufactured in Staffordshire and delivered at Liverpool to the defendant, who selected the canal as the mode of conveyance. When shipped, the iron was free from rust, but on arrival was rusted. It was proved that new iron will always rust in transit, and especially so, if shipped by water, and on this occasion the usual deterioration was greatly increased by a long frost which detained the iron on the canal. The court held that "Where a manufacturer contracts to deliver a manufactured article at a distant place, and the article, when delivered to the carrier for the purpose of being conveyed, is of a merchantable quality, the purchaser is bound to accept it, if only deteriorated to the extent that it is necessarily subject to in its course of transit from one place to the other."

In *English* v. *Spokane Com. Co.,* 57 Fed. 451, 6 C. C. A. 416, defendant in Spokane telegraphed plaintiffs in Omaha: "Wire price car strictly fresh eggs, new cases." Plaintiff replied: "Car fresh eggs, 16, Track here for immediate acceptance." Defendant answered: "If eggs strictly fresh, 14 cents. Answer if accepted." Plaintiffs replied: "Offer

eggs accepted.'' In an action for the purchase price, the defense was that there was an express warranty that the eggs should be strictly fresh at the place of delivery, and that when they arrived at Spokane they did not comply with the contract, but the court held under the contract, which is fully shown in the quoted telegrams, that the plaintiffs warranted the eggs to be strictly fresh at Omaha, and were not liable for deterioration naturally resulting during transit. To the same effect is *Mann* v. *Everston,* 32 Ind. 356; *Leggat* v. *Sand's Ale Brewing Co.,* 60 Ill. 158; *Leopold* v. *VanKirk,* 27 Wis. 152.

It follows from what we have said that plaintiff's instruction No. 5 should have been given. It would have told the jury in substance that if they believed that defendants ordered a car-load of good green eight-hand bananas from plaintiff at $3.80 per hundred weight to be delivered f. o. b. Railway Company at New Orleans, buyer's risk in transit, and that bananas of the kind and quality ordered were delivered by plaintiff to the railway company, in New Orleans, consigned to defendants, and that if they were properly packed in the car by plaintiff and the car was properly iced and ventilated at the time of delivery to the railway, then the title to the bananas passed to defendants upon delivery to the railway company, and they should find for plaintiff. Plaintiff's instruction No. 6, as amended, in different form, covered the case, whether the sale was made before loading at New Orleans or while ''rolling''. These instructions substantially covered the case and were properly drawn and should have been given. It is therefore unnecessary to refer to the other instructions offered by plaintiff. Some of them are not strictly applicable to the facts.

We have already referred to the fact that defendants claimed they took charge of the bananas on July 14th and the next day sold them under instructions of the Federal Food Administrator. They claimed they never voluntarily accepted them. If the bananas delivered to the carrier complied with plaintiff's contract, then the defendants were in duty bound to accept them. The title was in the defendants.

The bananas belonged to them and it was wholly immaterial to the issue in this case what instructions were given by the Federal Food Administrator, or what the defendants received for the bananas on a re-sale. It necessarily follows that the remarks made to the jury by defendants' attorney in argument relative to the conduct of the Federal Food Administrator or as to defendants having never accepted the bananas were irrelevant and improper.

There are other assignments of error, but it is unnecessary to comment upon them. Unless a different showing is made upon a new trial it will be the duty of the court to direct the jury to find for the plaintiff the amount in suit.

For the foregoing reasons, the judgment will be reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed and remanded.*