BENEFICIAL FINANCE COMPANY OF CHARLESTON,

*a Corporation*

*v.*

WOODROW COLLINS, *et al.*

(No. 12488)

Submitted May 3, 1966.               Decided June 28, 1966.

656

*Paul M. Friedberg*, for appellant.

No appearance for appellee.

CAPLAN, PRESIDENT:

In this action instituted in the Circuit Court of Kanawha County, West Virginia, the plaintiff, Beneficial Finance Company of Charleston, a corporation, sought to recover from the defendants, Woodrow Collins and Irene Collins, husband and wife, a certain sum of money which it alleged was due and owing on a promissory note signed by the defendants. Answering the complaint, the defendants denied the allegations made therein and stated that Woodrow Collins, upon his petition in the United States District Court for the Southern District of West Virginia, was awarded a discharge in bankruptcy. Their answer also noted that the plaintiff was listed as a creditor in said bankruptcy petition.

In reply the plaintiff stated that if the defendant, Woodrow Collins, secured a discharge in bankruptcy, the discharge does not operate to release the obligation sued upon "for the reason that such obligation constitutes a liability for obtaining money or property by false pretenses or false representations within the meaning of Section 17a (2) of the Bankruptcy Act." Specifically, the plaintiff alleges that the loan was obtained by the defendants by false representations in that they signed and submitted to the plaintiff a materially false financial statement which grossly misrepsented their indebtedness to other creditors and that the loan was made in reliance upon such financial statement.

The case was tried before a jury and a verdict was returned for the defendants. After a motion to set aside the verdict and for a new trial was denied the plaintiff prosecuted this appeal. Defendants, appellees here, have made no appearance in this Court and no brief has been filed on their behalf.

This controversy arose from a transaction between the plaintiff and the defendants wherein, on June 8, 1963, the defendants borrowed $800.00 from the plaintiff and signed the note recovery under which is the subject of this action. At the time the loan was made, and as a part of the loan application, the defendants were required to submit a complete financial statement. The application executed by the

defendants included on its face these words: "and to induce you to grant said loan, I hereby represent and warrant to you that a full complete and correct list of all my debts and liabilities and other claims against me is as follows;" Thereunder the defendants listed indebtedness to Household Finance in the sum of $217.31, American Finance Corp. in the sum of $281.66 and Haddad Clothing in the sum of $32.00, for a total indebtedness of $530.97. Elsewhere on the face of the loan application was the express admonition: "You must list all of your debts." The defendant stated therein that his salary was $550.00 per month.

The application was signed by the defendants and the loan was granted by the plaintiffs, after which three monthly payments were made thereon. On November 1, 1963, defendant Woodrow Collins, having filed a petition in the United States District Court for the Southern District of West Virginia, was awarded a discharge in bankruptcy. His petition in bankruptcy revealed an indebtedness of approximately $6,500.00, and, by stipulation, the defendants admitted that the amount of indebtedness shown on such petition was owed by them when the loan of June 8, 1963 was made by the plaintiff.

On February 19, 1964 the plaintiff instituted this action for recovery on the defendants' note in the amount of $780.67. This figure was predicated on the amount of the note less a credit for the return of precomputed interest as of the date of the bankruptcy petition of Woodrow Collins. Prior to the taking of testimony the trial court informed the jury that the parties had stipulated at a pre-trial conference that the defendant, Woodrow Collins, was discharged in bankruptcy on November 1, 1963 and that obligations were due and owing by the defendants, prior to the date of the financial statement involved herein, in the sum of $6,428.70.

Upon the trial of this case the plaintiff, by the manager of its Charleston office and by its employee who had actually consummated the loan transaction with the defendants, introduced the financial statement and testified that the loan was made on the strength of and in reliance upon said finan-

cial statement. These witnesses further testified that had they been aware of the actual indebtedness of the defendants the loan would not have been granted. Mr. Elmore, the employee of the plaintiff who had made the loan to the defendants, stated upon direct examination that he had asked defendant Woodrow Collins about certain other debts listed on a credit report and not shown on the subject financial statement and had been told by the defendant that these debts had been taken care of. That the defendant made this statement in regard to the payment of these other debts remained undisputed.

An objection was interposed on behalf of the defendants to the admission of the testimony of the plaintiff's witness Elmore. The ground therefor was that the witness was not testifying as to the actual transaction with Collins but rather was testifying to what his usual procedure was on an application for a loan. The court then interrogated Mr. Elmore, who testified that although he did not remember all of his conversation with Woodrow Collins he did recall that he had asked Collins if the financial statement revealed a complete list of his debts, to which the latter replied in the affirmative. The court then overruled the objection, saying that the "weight of the evidence is for the jury".

Defendant Woodrow Collins testified that he had received a blank loan application in the mail and that, upon completing the application and presenting it to Mr. Elmore, he obtained the subject loan. After he admitted that he had received a discharge in bankruptcy on November 1, 1963, the following questions and answers appear in the transcript of the record: "Q. I believe that the petition states that you owed approximately $6,500; is that right? A. I did. Q. You are the same Woodrow Collins that obtained a loan on June 8, 1963, from Beneficial Finance Company? A. Yes. Q. At the time you obtained this loan from Beneficial did you owe most of these debts that were listed on your bankruptcy petition? A. I did." This defendant testified that in listing only a part of his actual debts on the financial statement he did not intend to deceive the plaintiff company but thought that the company only wanted the

names of a few of his creditors for reference purposes. Testifying further, he said that he had obtained at least two prior loans from this company and that on those occasions he had included only a partial list of his indebtedness on the financial statements.

Irene Collins acknowledged during direct examination that she and her husband were indebted to more creditors than were indicated on the financial statement and that the sum of their debts was more than the $530.97 listed. She further stated that she knew that the purpose of filling out the statement was to borrow money.

At the conclusion of the testimony and after the parties had rested, the court and counsel retired to the judge's chambers where the plaintiff made a motion for a directed verdict. In support of its motion the plaintiff, after stating that there had been no evidence introduced challenging the authenticity of the note or the amount involved and that there had been no denial of the obligation, took the position that the defense of bankruptcy was ineffective in this case. It averred that Section 17 (a) (2) of the Bankruptcy Act specifically exempts from discharge in bankruptcy those liabilities incurred for obtaining money by false representations or for obtaining money on credit in reliance upon a materially false statement in writing respecting the financial condition of the bankrupt made or published with intent to deceive.

It was then stated that the plaintiff had proved that the financial statement signed by the defendants was false. There was no evidence to the contrary and the falsity thereof was admitted by the defendants. The plaintiff therefore says that the element of falsity could not be determined by the jury in favor of the defendants. The plaintiff further says that there can be no question for the jury as to the materiality of the false financial statement. The third point raised by the plaintiff is that the plaintiff proved without contradiction or any evidence to the contrary that it relied upon the financial statement in making the loan. It is contended, therefore, that there are no questions in this case

to be decided by the jury and that the court should have directed a verdict for the plaintiff.

The trial court agreed with all of the contentions of the plaintiff but concluded that the phrase in the bankruptcy act relating to the defendants' intent to deceive constituted a sufficient reason to submit this case to the jury. Thereupon the case was submitted to the jury and, as noted herein, a verdict was returned in favor of the defendants.

On this appeal the plaintiff assigns as error the action of the trial court in refusing to direct a verdict, in refusing to give Instruction No. 1, offered by the plaintiff, and in giving Instructions No. 3 and No. 5, submitted by the defendant.

Ordinarily one who is awarded a discharge in bankruptcy is no longer obligated to pay any debt owed to a creditor listed in his bankruptcy petition. Unquestionably, Beneficial Finance Company was so listed as one of his creditors by defendant Woodrow Collins. Therefore, unless some provision of the Bankruptcy Act creates an exception to the general rule of discharge, the defendant is not obligated to pay the debt involved in this controversy. As noted herein, it is the plaintiff's contention that Section 17 of the Bankruptcy Act contains such provisions.

Section 17 of the Bankruptcy Act (11 U.S.C.A. §35) reads, in part, as follows:

"(a)   A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive * * *."

That the financial statement submitted to Beneficial by the defendants was false can not be disputed. The falsity of the statement was admitted by the defendants by stipu-

lation and was found by the court in his comments on the plaintiff's motion for a directed verdict. "Falsity implies more than erroneous or untrue; it indicates knowledge of untruth." Black's Law Dictionary, 4th Ed.; *Abercrombie* v. *Hair,* 185 Ga. 728, 196 S. E. 447. Also that such statement was materially false, in showing a total indebtedness of $530.97, as opposed to actual debts totaling $6,428.70, revealed in the bankruptcy petition, is beyond dispute.

In circumstances similar to the facts in this case, as revealed by the evidence, the great weight of authority holds that, by reason of the provisions of Section 17 (a) (2) of the Bankruptcy Act, the bankrupt is denied the protection intended to be afforded by that act. This is based on the theory that Congress, in enacting the bankruptcy laws, "intended that the honest debtor be exonerated in bankruptcy —not the dishonest". *In Re Oxford Investment Company,* 246 F. Supp. 651.

It was held in *Ohio Finance Company* v. *Greathouse* (Ohio), 64 Abs. 1, 110 N. E. 2d 805, that where a bankrupt borrowed money upon his written, materially false statement of his liabilities, which statement was made to obtain a loan and was relied upon by the lender, discharge in bankruptcy did not discharge the debt represented by the note, even though the bankrupt listed such debt in the bankruptcy proceedings. The court therein cited, as the basis for its ruling, Section 17 (a) (2) of the Bankruptcy Act.

In *Tower Finance Corporation* v. *Winemiller,* 43 Ill. App. 2d 10, 192 N.E. 2d 411, the Court cited the above section in holding that the failure of a borrower to correctly list all his obligations on a financial statement furnished to the loan company when the loan was obtained constituted obtaining money by false pretenses or false representations and the borrower's debt was not discharged by the bankruptcy proceeding.

Basing its decision on Section 17 (a) (2) of the Bankruptcy Act, the Court in *Thomas* v. *Crosby* (D.C. Mo.), 146 F. Supp. 296, held that where the plaintiffs were induced by the mak-

er's false representations to part with their money and accept a note, which they would not have taken, except for the false representations, the note was a liability for obtaining money by false pretenses or false representations and the maker's discharge in bankruptcy did not release him from the liability under judgment entered on such note, notwithstanding the fact that such liability was listed in the maker's voluntary petition in bankruptcy.

The view expressed in the above decisions, that under the provisions of Section 17 of the Bankruptcy Act, a discharge does not have the effect of releasing the bankrupt's liabilities for obtaining money by false pretenses or false representations, has been adopted by the courts in many jurisdictions, including the United States Supreme Court, and clearly is in accord with the great weight of authority. *Morimura, Arai & Company* v. *Taback, et al.,* 279 U. S. 24, 73 L. ed. 586, 49 S. Ct. 212; *CHF Finance Company* v. *Corca* (La.), 152 So. 2d 830; *Hills Sav. Bank* v. *Cress,* 205 Iowa 306, 218 N. W. 74; *National Finance Company of Utah* v. *Valdez,* 11 Utah 2d 339, 359 P. 2d 9; *In Re Branch* (D.C. Tenn.), 242 F. Supp. 534; *Yellow Creek Logging Corporation* v. *Dare,* 30 Cal. Rptr. 629. We are in agreement with the principles expressed in the foregoing decisions.

The decisive determination to be made now is whether the provisions of Section 17 (a) (2) of the Bankruptcy Act operate in the instant case to deprive the defendants of the defense of bankruptcy. Before that section becomes so operative the plaintiff must show: (1) That the defendants made false representations; (2) that these representations were relied upon in making the loan; and (3) that these representations were made with intent to deceive. We must now consider the evidence adduced at the trial of the case to determine if the plaintiff has borne this burden of proof.

The evidence reveals that the defendants knowingly submitted to the plaintiff a false statement of their financial condition. This was not only undisputed but was readily admitted by the defendants. A jury could not have properly made a finding to the contrary on this matter. Thus,

as to the first element, the plaintiff has made an adequate showing.

The second element to be proved by the plaintiff is that the loan was made in reliance upon the loan application signed by the defendants, a material part of which was the financial statement. Consider now the evidence of reliance produced by the plaintiff. Plaintiff's Exhibit No. 2, Application and Financial Statement, clearly shows that the loan was made in reliance upon the defendants' representation of their financial condition. This statement is found on the application signed by the defendants: "I hereby apply to you for a loan of $800.00. For the purpose of showing my ability to repay the same and to induce you to grant said loan, I hereby represent and warrant to you that a full, complete and correct list of all my debts and liabilities and other claims against me is as follows: * * *."

In addition to that exhibit, the record reveals the following testimony by Mr. Elmore on behalf of the plaintiff: "Q. Restrict your answer to the conversation with Mr. Collins. What, if anything, did you ask him in reference to that financial statement? A. I asked him if this was a complete list of his outstanding debts, and if he had listed everything. Q. What, if anything, did he reply? A. He replied this was complete."

Mr. Kinney, manager of Beneficial when the loan was made, testified as follows: "Q. On what did you base your decision to make this specific loan to Mr. Collins? A. On the ability of the man to repay. Q. How did you evaluate his ability to repay the loan? A. Well, from the obligations owing, as determined from the financial statement and from credit information and from employment, which are fundamentals. * * *." "Q. What part, if any, did that financial statement play in your decision to make this specific loan to Mr. Collins? A. An important part. The total obligations outstanding, the amount of payments and the amount of shown income. * * *." After saying that he would not make a loan to one with a $550.00 monthly income who owed various creditors $6,500.00, he testified: "Q.

Extending the hypothesis one step further, if the $6,500 were owed to some 25 or 27 creditors and the monthly obligations on those accounts exceeded $300.00, would you have made the loan? A. Certainly not." The record of this case reveals that the defendants, when the loan was made, admittedly owed twenty five to thirty creditors approximately $6,500.00.

No evidence of any nature was offered by the defendants to rebut the plaintiff's clear and undisputed evidence of reliance. The learned trial judge said, in commenting on the plaintiff's motion for a directed verdict, "I agree that there is no evidence that it was not relied upon. The evidence is unrebutted and uncontradicted that there was a reliance upon it." Furthermore, the defendants did not attack the credibility of the plaintiff's witnesses.

It is within the province of the jury to settle the facts and when the facts are ascertained the law determines the rights of the parties. Consequently, when there is a question of fact based upon conflicting testimony or upon testimony, though not conflicting, upon which different reasonable conclusions may be reached, such question is for jury determination. *Campbell* v. *Campbell*, 146 W. Va. 1002, 124 S. E. 2d 345; *Graham* v. *Crist*, 146 W. Va. 156, 118 S. E. 2d 640; *Overton* v. *Fields*, 145 W. Va. 797, 117 S. E. 2d 598; 19 M.J., Trial, §12. However, where all of the evidence, fairly considered, points to one conclusion only, a question of law is presented which is to be answered by the court, not the jury. As stated in Point 3 of the Syllabus of *Craft* v. *Fordson Coal Company*, 114 W. Va. 295, 171 S. E. 886, "When the facts in a case are not in dispute and should lead all reasonable minds to the same conclusions, the right of recovery is a question of law for the court." See *Workman* v. *Wynne*, 142 W. Va. 135, 94 S. E. 2d 665; *Daugherty* v. *Baltimore and Ohio Railroad Company*, 135 W. Va. 688, 64 S. E. 2d 231; *Moore* v. *Skyline Cab*, 134 W. Va. 121, 59 S. E. 2d 437.

In the instant case there is no material dispute of fact as to whether the plaintiff relied upon the defendants' finan-

cial statement. The plaintiff proved by ample evidence that it did rely upon such statement. The defendants did not even attempt to refute this evidence, except to say that they thought that the plaintiff only wanted a few credit references instead of a statement of their financial condition. In view of the clear language on the face of the loan application and considering the defendants' admitted experience in obtaining such loans, the defendants' reply is incredible. We are of the opinion that all of the evidence, fairly considered, requires, as a matter of law, the conclusion that the plaintiff relied upon the financial statement of the defendant in making the subject loan. This being a question of law, not one involving substantial issues of fact, the trial court should not have submitted it to the jury and to have done so constitutes error. *Morrison* v. *Harmon*, 113 W. Va. 304, 167 S. E. 741.

In order to make Section 17 (a) (2) of the Bankruptcy Act applicable the plaintiff must prove the third element, that is, that the defendants' representations were made with intent to deceive. The trial court noted that Mr. Collins had testified that he did not intend to defraud the loan company, and permitted this question to go to the jury. It must be decided on this appeal whether the evidence in this case, relative to intent to deceive, presented a proper question for jury determination.

Whether one made a representation with intent to deceive is determined from the facts and circumstances surrounding the case under consideration. Denial of such intent by the party charged therewith is not controlling and will even be disregarded if the factual situation clearly shows the contrary. A wilfully false representation is presumed from the circumstances of the transaction and the situation of the parties and fraudulent intent may be imputed or inferred. This is on the theory that one must be presumed to have intended the necessary consequences of his own voluntary acts. *Degner* v. *Moncel*, 6 Wis. 2d 163, 93 N. W. 2d 857; *Claflin* v. *Commonwealth Insurance Company*, 110 U. S. 81, 28 L. ed. 76, 3 S. Ct. 507. Where a false

statement, in its nature calculated to defraud, is made with knowledge of its falsity, intent will be inferred. *Polley* v. *Boehck Equipment Co.*, 273 Wis. 432, 78 N. W. 2d 737; 23 Am. Jur., Fraud and Deceit, §119.

The defendants in the instant case executed and submitted to the plaintiff a false financial statement, which, at the time, they knew was false. They testified that they knew that the purpose of signing this statement was to obtain money from the plaintiff. Furthermore, Mr. Elmore testified that he asked Mr. Collins if he owed the obligations listed on a report from the Charleston Retail Credit Association, to which Mr. Collins replied that such debts had been taken care of. This testimony was not denied by Mr. Collins and stands uncontradicted in this record. Actually, it was developed in this case that the obligations listed in the credit report had not been taken care of but were still owed by the defendants when this loan was made.

In these circumstances, as reflected by the evidence, it is obvious that this statement was calculated to deceive and was made with knowledge of its falsity. If a false representation was knowingly made to induce the plaintiff to make this loan, then intent to deceive must be presumed. As herein stated, one must be presumed to have intended the necessary consequences of his own voluntary acts. Therefore, the court should have found the existence of intent to deceive as a matter of law and should not have submitted this question to the jury.

In deciding this case as we do, we are not unaware of the well established rule which declares that a jury verdict is entitled to great respect, especially when approved by the trial judge. However, it is equally well established that a verdict of a jury, which is without sufficient evidence to support it, or is plainly against the decided weight and preponderance of conflicting evidence, will on proper motion be set aside by the court. *Lightner* v. *Lightner*, 146 W. Va. 1024, 124 S. E. 2d 355; *Campbell* v. *Campbell*, 146 W. Va. 1002, 124 S. E. 2d 345; *Preston County Coke Company* v. *Preston County Light and Power Company*, 146 W. Va. 231,

119 S. E. 2d 420; *Mulroy* v. *Co-Operative Transit Company,* 142 W. Va. 165, 95 S. E. 2d 63.

A court should proceed with caution in directing a verdict and should not do so "except in a case where if the jury should return a verdict for the other party, the court would be compelled to set such verdict aside." Point 4, Syllabus, *Bank of Greenville* v. *Lowry & Co.,* 79 W. Va. 10, 90 S. E. 390. In deciding whether to direct a verdict, the court should be guided by what its action would be if a verdict should be returned for the opposite party and a motion made to set aside the verdict. *Bank of White Sulphur Springs* v. *Lynch,* 93 W. Va. 382, 116 S. E. 685. When the evidence, though conflicting, embraces uncontradicted facts and circumstances which cause the case to turn in favor of one of the parties, so that a verdict adverse to such party would have to be set aside on proper motion, the court should direct a verdict in his favor. *McCoy, et al.* v. *Cohen, et al.,* 149 W. Va. 197, 140 S. E. 2d 427.

This principle is set out in clear and concise language in Point 4 of the Syllabus of *Vaccaro Brothers & Company* v. *Farris, et als.,* 92 W. Va. 655, 115 S. E. 830, as follows: "Where the evidence given on behalf of defendant is so clearly insufficient to support a verdict for him that such verdict, if returned by the jury, must be set aside, and the evidence in support of plaintiff's claim is clear and convincing, it is the duty of the trial court, when so requested, to direct a verdict for the plaintiff." To the same effect, see *Adkins* v. *City of Hinton,* 149 W. Va. 613, 142 S. E. 2d 889; *Campbell* v. *Campbell,* 146 W. Va. 1002, 124 S. E. 2d 345; *Lightner* v. *Lightner,* 146 W. Va. 1024, 124 S. E. 2d 355; *Preston County Coke Company* v. *Preston County Light and Power Company,* 146 W. Va. 231, 119 S. E. 2d 420; *Mulroy* v. *Co-Operative Transit Company,* 142 W. Va. 165, 95 S. E. 2d 63; and 19 M.J., Verdict, §31. Furthermore, to warrant submission of an issue to the jury it is not sufficient that there be a mere scintilla of evidence supporting it. *Hicks* v. *New River & Pocahontas Cons. Coal Co.,* 95 W. Va. 17, 120 S. E. 898.

The clear preponderance of the evidence in this case, most of which is uncontroverted, shows that the defendants ob-

tained a loan of money from the plaintiff upon the submission of a financial statement signed by them; that such statement was false; that, as reflected by the circumstances and situation of the parties, the plaintiff relied upon the statement of their financial condition in making the loan; and, that such statement, being admittedly false, necessarily imputed intent to deceive. The evidence offered in defense to the effect that Woodrow Collins believed that he was requested to submit a credit reference, not a financial statement, is not, in view of all the evidence, sufficient to support his position on the issues of reliance and intent.

In view of the facts and circumstances established by the evidence, the circuit court should have directed a verdict for the plaintiff and its refusal to do so was reversible error. By reason of this Court's decision, it becomes unnecessary to consider the instructions set out in the assignments of error.

The judgment of the Circuit Court of Kanawha County is reversed, the verdict is set aside, and this case is remanded to that court with directions to enter judgment for the plaintiff.

*Reversed and remanded with directions.*