WILLIAM E. DIXON, *et al., dba*

*Beechurst Avenue Joint Venture*

*v.*

AMERICAN INDUSTRIAL LEASING COMPANY, *etc.*

(No. 13872)

Decided March 27, 1979.

833

*Spilman, Thomas, Battle & Klostermeyer, John H. Tinney and Frederick L. Thomas, Jr.,* for appellant.

*Michael Tomasky, Charles C. W. Atwater,* for appellees.

CAPLAN, CHIEF JUSTICE:

This is an appeal from a final order of the Circuit Court of Monongalia County wherein the court overruled a motion of the appellant, American Industrial Leasing Company (hereinafter, American Leasing), to set aside the verdict and grant it a new trial. We reverse and enter judgment here in favor of American Leasing.

The action involved a student dormitory, known as Campanile, situated on the campus of West Virginia University, which was under lease by American Leasing to Beechurst Avenue Joint Venture (hereinafter, Beechurst) at a stated annual rental.

In their complaint, William E. Dixon, Harry Meeks, John Junkins and Robert H. Law, partners, trading and doing business as Beechurst Avenue Joint Venture, sought damages from American Leasing and the West Virginia University Board of Governors (hereinafter, Board of Governors) for an alleged conspiracy which they asserted resulted from a breach of contract be-

tween Beechurst and the Board of Governors. It was contended by Beechurst that the Board of Governors and American Leasing were guilty of collusion amounting to a conspiracy to wrongfully cause the termination of the aforesaid lease, thereby allowing the sale of the student dormitory to the University free of the Beechurst lease.

American Leasing answered and filed a counterclaim to the complaint. In its counterclaim, American Leasing sought to recover the amount allegedly due for delinquent rent and for taxes. In a separate trial on the counterclaim, the jury, upon instruction by the court, returned a verdict for American Leasing in the sum of $80,956.45. Judgment was entered on that verdict and it became final.

As heretofore noted, the instant case involves the conspiracy issue and the damages allegedly resulting therefrom. The jury found for Beechurst in the amount of $100,000.00, after which the refusal of the aforesaid motion by American Leasing prompted this appeal. The appellant assigns seven errors for reversal of the judgment. We believe that one assignment is dispositive of this case. Our decision to reverse and to enter judgment here is based upon our conclusion that no conspiracy was proved and that the trial court should have directed verdict for American Leasing at the conclusion of the evidence.

As succinctly stated in 15A C.J.S., *Conspiracy*, Sec. 1 (1), a civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff. 16 Am. Jur. 2d, *Conspiracy*, Sec. 44.

Upon examination of the record, we perceive no competent evidence of conspiracy which would fit the foregoing definition. Even though the Board of Governors and American Leasing had discussed the sale of the subject

dormitory and had even carried on some negotiations relative thereto, as hereinafter noted, their actions were not designed to accomplish an unlawful purpose, nor were the means employed by them unlawful. Consequently, there were no wrongful acts done by the defendants to the injury of the plaintiffs.

The loss claimed by the plaintiffs remained unproved. While their venture proved to be a failure and resulted in a loss of expected profit, the evidence revealed that such loss occurred from the beginning and was not caused by any action of American Leasing; the remainder of the lease, upon which the plaintiffs were attempting to collect damages, was of no value. Plainly stated, Beechurst was engaged in a losing venture, there being no evidence that it could recover from the adverse financial plight into which it had fallen.

As stated earlier in this opinion, actionable civil conspiracy contemplates a concerted action by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by some unlawful means. Where is the unlawful purpose or the unlawful means in this case? We see none.

It was judicially determined that Beechurst was delinquent in its rental payments to American Leasing. That was settled in the prosecution of American Leasing's counterclaim, wherein it was determined that Beechurst was delinquent in the amount of $80,956.45. The dismissal of the untimely appeal by Beechurst is further evidence of such determination. *Dixon v. American Industrial Leasing*, ____ W. Va. ____, 205 S.E.2d 4 (1974). Under the lease the lessor, American Leasing, had an express right to cancel and sell the property. There was no wrongful act to support the alleged conspiracy if the act complained of, termination of the lease, was the result of an exercise of an absolute right.

Beechurst had a right to their tenancy and continued possession of the dormitory so long as it fulfilled its obligations under the lease. Here, Beechurst did not per-

form the covenants of the lease and lost its right to tenancy and continued possession.

In *Bliss v. Southern Pacific Company*, 212 Or. 634, 321 P. 2d 324 (1958), an analogous factual situation, the court said:

> Incidental damages resulting from the exercise of an absolute right is not actionable, nor is it made so by augmenting the complaint with further allegations of fraud.
>
> \* \* \*
>
> Therefore, even if the railroad company had evil motives for its action, they become unimportant as long as it conformed its acts of termination to the rights conferred upon it by the agreement ... The pleading revealing as it does an unquestioned right to terminate the lease, the action taken by the railroad is not tortious. It follows then that in the absence of such wrongful action on the part of the Southern Pacific, there is no foundation upon which a charge of conspiracy can rest.

Summarizing, the *Bliss* court further said:

> If, as the pleading indicates, the offending action from whence the instant matter is derived was the termination of the lease, then it follows ... that there can be no tort to support the alleged conspiracy if the act of the railroad company was the result of an exercise of an absolute contractual right ...

In the instant case the termination of the lease by American Leasing was the result of an exercise of an absolute contractual right. The lease, in effect, provided that if Beechurst failed in its obligation to pay the prescribed rental, American Leasing could terminate the lease. It came to pass that Beechurst failed in that obligation and American Leasing, exercising an absolute contractual right, terminated the lease. Having acted pursuant to such right, it was free to deal with whomever it pleased. It was not obligated to. consult Beechurst as to whom it might sell the property or for how much.

Although it was not alleged in its complaint, Beechurst now asserts that the lease was not properly terminated by American Leasing because the notice of termination was not given in accordance with the terms of the lease agreement. This assertion is without merit. It was readily admitted that by letter dated March 26, 1968 Beechurst was notified that the lease was terminated as of May 1, 1968. It was thereby given adequate notice that it was in default in the payment of rent and was thereby afforded an opportunity to remedy that situation should it be able to do so.

The only purpose for the requirement of notice is to afford the one served with an opportunity to protect himself should he choose to do so. While it is always better to follow the mode of service prescribed in an agreement, service by that mode is not fatal if the one to be served has had actual notice of the action to be taken. Here, the fact that the notice was not delivered by registered mail does not furnish a reason for invalidating the termination of the lease. The record is replete with evidence that Beechurst had actual notice of the delinquency and of the termination of the lease. See *State v. Hatfield*, 136 W. Va. 342, 67 S.E.2d 529 (1951); *Smith v. Wallace*, 116 W. Va. 546, 182 S.E. 538 (1935); and *Bailey Lumber Co. v. General Construction Co.*, 101 W. Va. 567, 133 S.E. 135 (1926).

As herein noted, the state of the record at the conclusion of all of the evidence clearly called for a directed verdict in favor of American Leasing. This Court has consistently held in many cases that a jury verdict which is without sufficient evidence to support it, or is plainly against the clear preponderance of conflicting evidence will, upon proper motion, be set aside by the court. See *Hollen v. Linger*, 151 W. Va. 255, 151 S.E.2d 330 (1966); *Beneficial Finance Company v. Collins*, 150 W. Va. 655, 149 S.E.2d 221 (1966); *Adkins v. City of Hinton*, 149 W. Va. 613, 142 S.E.2d 889 (1965); and *Vaccaro Brothers & Company v. Farris*, 92 W. Va. 655, 115 S.E. 830 (1923).

In *Vaccaro, supra,* the Court wrote Syllabus No. 4 in the following language:

> Where the evidence given on behalf of defendant is so clearly insufficient to support a verdict for him that such verdict, if returned by the jury, must be set aside, and the evidence in support of plaintiff's claim is clear and convincing, it is the duty of the trial court, when so requested, to direct a verdict for the plaintiff.

When a court is requested by motion to direct a verdict, it should be guided by what its action would be in the event a verdict should be returned for the opposite party and a motion made to set aside the verdict. If it believes that it would be compelled to set aside such verdict, then it should grant the motion for a directed verdict. See *Superior-Elkhorn By-Products Coal Co. v. Three States Coal Company,* 106 W. Va. 270, 145 S.E. 436 (1928). Also, as expressed in *Beneficial Finance Company v. Collins, supra,* "A court should proceed with caution in directing a verdict and should not do so 'except in a case where if the jury should return a verdict for the other party, the court would be compelled to set such verdict aside.' Point 4, Syllabus, *Bank of Greenville v. Lowry & Co.,* 79 W. Va. 10, 90 S.E. 390 [1916]." *Bank of White Sulphur Springs v. Lynch,* 93 W. Va. 382, 116 S.E. 685 (1923).

In view of the total lack of evidence of a conspiracy in the instant case; in view of the fact that the action of American Leasing in terminating the lease was an exercise of an absolute contractual right; and, in view of the failure of Beechurst to fulfill its obligations under the lease, thereby terminating its right to its tenancy and continued possession of the dormitory, it should have been clear to the trial court that any verdict in Beechurst's favor would have to be set aside. We hold that the court should have so acted and enter judgment here in favor of American Leasing.

*Reversed; judgment entered here.*