# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Scott Ellis,
**Plaintiff/Counterclaim Defendant Below**

**and**

**Kimberly Ellis,**
**and Tri-State Mine Service, Inc.,**
**Plaintiffs Below,**
**Petitioners**

**vs.)  No. 17-0409** (Logan County 15-C-46)

**Stephen B. Herndon,**
**Defendant/Counterclaim Plaintiff,**

**and**

**Misha Herndon,**
**Defendant Below,**
**Respondents**

**FILED**

**May 11, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Scott Ellis, Kimberly Ellis, and Tri-State Mine Service, Inc., by counsel Michael B. Hissam, Isaac R. Forman, and Ryan M. Donovan, appeal the order of the Circuit Court of Logan County, entered on April 5, 2017, granting respondents' motion for summary judgment and dismissing petitioners' claims and action for declaratory judgment. Respondents Stephen B. Herndon and Misha Herndon appear by counsel James M. Cagle.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Scott Ellis, Kimberly Ellis, and their family-owned company Tri-State Mine Service, Inc. (collectively, "the Ellises" or "petitioners") filed the complaint initiating this action in 2015. The Ellises asserted that Stephen Herndon, while working as the warehouse manager for Arch Coal's Mountain Laurel complex, operated a "kickback" scheme under which vendors were expected to return to him 10% of the total payment for work performed. Tri-State Mine Service, Inc. ("Tri-

1

State") was a vendor. The Ellises also asserted that Mr. Herndon left Mountain Laurel's employ and "demanded" partnership in Tri-State as well as employment for his wife, Misha Herndon, and that when Mr. Herndon's schemes became publicly known, Tri-State lost business and was devalued. The Ellises denied that Mr. Herndon was made a partner in the Tri-State business. Their claims against the Herndons included: civil conspiracy, extortion, conversion, unjust enrichment, tortious interference, and breach of fiduciary duty, and they sought declaratory judgment that there was no partnership between the Ellises and either of the Herndons. The Herndons filed a counterclaim, asserting that Mr. Herndon and Mr. Ellis were equal partners in Tri-State, and that Mr. Herndon was entitled to half the value of Tri-State.

After a period of discovery, the Ellises filed a motion for summary judgment on their declaratory judgment action, and the circuit court denied it, explaining that there are "disputed facts in the record in this case that go to what the agreement was. . . ." The Herndons filed a motion for summary judgment seeking dismissal of all of the Ellises' claims. The circuit court cited various theories of law, and summarily concluded that the Ellises were estopped from asserting a claim for damages because their damages grew from an illegal kickback scheme in which they were willing participants. The court based its determination on Mr. Ellis's own description, offered in federal court proceedings, of his part in the scheme. The circuit court specifically found no wrongdoing on Misha Herndon's part. The Herndons voluntarily dismissed their counterclaim and the circuit court confirmed the dismissal by order entered on March 27, 2017, under the condition that the counterclaim be reinstated if the court's grant of summary judgment to the Herndons were eventually set aside by this Court.

The Ellises appeal the circuit court's grant of summary judgment, asserting four assignments of error. First, they argue that the circuit court made improper credibility determinations and factual findings "regarding hotly disputed issues of material fact." Second, they argue that the circuit court erred in applying the doctrines of illegal contracts, *in pari delicto*, waiver, estoppel, consent, and statute of limitations, because application of each doctrine was made upon the circuit court's improper factual findings. Third, they argue that the circuit court erred in concluding that there is no evidence of a conspiracy between Mr. Herndon and his wife, because the evidence showed that Mrs. Herndon received a substantial salary in exchange for performing "virtually no work." Finally, they argue that the circuit court "erred in refusing to apply the West Virginia Uniform Partnership Act . . . to prohibit Mr. Herndon's counterclaim that he became a partner in Tri-State Mine Service, Inc. . . ." Because this appeal is before us on the circuit court's grant of summary judgment, our review is de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 190, 451 S.E.2d 755, 756 (1994).

Petitioners' first and second assignments of error concern petitioners' assertion that the circuit court made improper factual determinations in granting summary judgment to respondents. They argue that Mr. Ellis "has been unwavering in his position that the Herndons extorted him, his wife, and their business." Prior to the filing of the complaint that initiated this action, Mr. Ellis and Mr. Herndon each pled guilty to a single-count information of "structuring" in the United States District Court for the Southern District of West Virginia at a hearing conducted on July 16, 2014. At the plea hearing, both defendants affirmed that they had entered into stipulations. Mr. Ellis's stipulations provided, in part:

2

To ensure that Tri-State received rebuild work from the Mountain Laurel Mining Complex, Mr. Ellis participated in a bid-rigging scheme with several other vendors. In exchange for guaranteeing the winning bid on certain rebuild jobs, each of the participating vendors were required to pay an Arch employee. . . .

Most of the payments . . . were delivered through the Mountain Laurel warehouse manager, Stephen Herndon. Mr. Ellis usually delivered the cash in an envelope to Mr. Herndon or another Arch employee . . . .

Around April 1, 2011, Mr. Herndon left Arch Coal and Mr. Ellis gave him a half-interest in Tri-State. . . .

Between April 1, 2011, and September 30, 2013, Mr. Herndon and Mr. Ellis, working in concert with each other, structured cash from various personal and business accounts in an amount of $183,835. Mr. Herndon and Mr. Ellis estimate they used virtually all of these structured funds to pay cash kickbacks . . . and that during that time period, they paid $237,000 in cash kickbacks . . . .

Additionally, Mr. Ellis's sentencing memorandum, submitted by his counsel to the federal district court, explains that Mr. Ellis entered the kickback scheme with Mr. Herndon's predecessor at Mountain Laurel, and Mr. Herndon entered the scheme later. However, petitioners assert that Mr. Ellis informed his attorney in the federal action that he had been the victim of extortion by Mr. Herndon but that Mr. Ellis's attorney (who also represented Mr. Herndon) "didn't want [Mr. Ellis] to worry about it" and advised him to enter into the stipulation as written above. Petitioners assert that a genuine issue of material fact exists—and was ignored by the circuit court—because Mr. Ellis disavowed his federal court stipulation. Petitioners argue without citation to legal authority, that a jury may credit his testimony that he knowingly entered into a false stipulation.

We have explained that a party to litigation does not create a genuine issue of material fact sufficient to defeat a motion for summary judgment with his own inconsistent evidence unless the contradiction is adequately explained. Syl. Pt. 4, *Kiser v. Caudill*, 215 W.Va. 403, 599 S.E.2d 826 (2004). The contradiction was not adequately addressed before the circuit court, inasmuch as the history of the kickback scheme and structuring events was well known to Mr. Ellis at the time he entered his plea in federal district court, and inasmuch as he offered no evidence addressing the inconsistency in this civil litigation other than his own testimony. Under the unique circumstances before us, we find that the circuit court was justified in determining that there was no genuine issue of material fact. Furthermore, we are not persuaded by petitioners' argument that the damages claimed in this action are separate from the monetary withdrawals on which Mr. Ellis's structuring plea was based. The stipulation conveys Mr. Ellis's admission that he was a willing principle in the scheme as well as in the resultant illegal structuring activity. He thus was a willing participant in the activities that petitioners assert led to the devaluation of Tri-State. We find no error with respect to petitioners' first assignment. Having found that the circuit court did not make improper factual or credibility determinations, we likewise find no error in the circuit court's application of facts to the various legal doctrines described in petitioners' second assignment.

3

In their third assignment of error, petitioners argue that the circuit court wrongly found that the Herndons engaged in no conspiracy, because Mrs. Herndon received a great deal of money from her employment with Tri-State. "'A civil conspiracy is . . . a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s).' Syl. Pt. 9, in part, *Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255 (2009)." *Jane Doe-1 v. Corp. of President of The Church of Jesus Christ of Latter-day Saints*, 239 W.Va. 428, 801 S.E.2d 443, 448 (2017). We have held that, "In order for civil conspiracy to be actionable it must be proved that the defendants have committed some wrongful act or have committed a lawful act in an unlawful manner to the injury of the plaintiff. . . ." Syl. Pt. 1, in part, *Dixon v. Am. Indus. Leasing Co.*, 162 W.Va. 832, 832, 253 S.E.2d 150, 151 (1979). Because Ms. Herndon's testimony reflected that she left employment paying approximately $30,000 per year in order to earn $520,000 per year at Tri-State, petitioners assert that they have met this burden. We disagree. Here, particularly because Mr. Ellis's statement reflects that he jointly engaged in the kickback scheme with Mr. Herndon, we find that the increase in Mrs. Herndon's annual income alone does not support a finding that the Herndons engaged in a common plan to tortiously harm petitioners.

Petitioners' final assignment of error concerns the circuit court's denial of petitioners' summary judgment motion on the Herndons' counterclaim. The counterclaim was voluntarily dismissed, to be reinstated only if the circuit court's grant of summary judgment to respondents on petitioners' claims were reversed by this Court. Inasmuch as we have found no grounds for reversal, we need not consider petitioners' argument on the fourth and final assignment of error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 11, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

**DISQUALIFIED:**

Justice Menis E. Ketchum