569 S.E.2d 447

**Sue Martin POLITINO, Plaintiff Below, Appellee**

v.

**AZZON, INC., and John P. See and Brenda See, Defendants Below, Appellants**

and

**Azzon, Inc. and John P. See, Third–Party Plaintiffs, Appellants**

v.

**Rodney Politino and Sue's Reclamation & Construction, Inc., A West Virginia Corporation, Third–Party Defendants, Appellees.**

No. 29766.

Supreme Court of Appeals of West Virginia.

Submitted April 23, 2002.

Decided June 17, 2002.

Dissenting Opinion of Justice Albright, June 24, 2002.

David F. Nelson, Esq., Schumacher, Francis & Nelson, Charleston, for Appellants.

Mark A. Ferguson, Esq., Sprouse & Ferguson, PLLC, Charleston, for Appellee.

PER CURIAM:

This is an appeal by Azzon, Inc., and John P. See and Brenda See, from a summary judgment entered by the Circuit Court of Kanawha County in an action instituted by Sue Martin Politino. The appellant John P. See was ordered to pay Ms. Politino $83,643.53, together with interest, from January 15, 1997. On appeal, the appellants claim that the circuit court erred in entering the summary judgment.

## I.

### FACTS

The appellant Azzon, Inc., is a corporation organized by John P. See and Rodney Politino on May 20, 1993. Mr. See and Mr. Politino were also the officers and stockholders of the corporation.

In 1994 and 1995, Azzon, Inc., borrowed substantial sums of money to finance its operations. Its borrowings were consolidated on September 25, 1995, in a $75,000 loan made by Merchant's National Bank of Montgomery, West Virginia. Mr. See and Mr. Politino each personally guaranteed this loan. Additionally, Sue Martin Politino, Rodney Politino's wife, who had already leased certain construction equipment which she personally owned, to Azzon, Inc., pledged other construction equipment, which she also personally owned, to secure the loan.

On November 17, 1995, without the knowledge or consent of John P. See, Rodney Politino and Sue Martin Politino incorporated Sue's Reclamation & Construction, Inc., which was organized to engage in the same type of business as Azzon, Inc. When later asked why this corporation was organized, Sue Martin Politino stated that she "didn't expect Azzon to eventually go on, and I have at the time four children to feed."

After Sue's Reclamation & Construction, Inc., was formed, Azzon, Inc., experienced increasing difficulty in its operations, and by December 1995, approximately a month after Sue's Reclamation & Construction, Inc., was formed, Azzon, Inc., had defaulted on the lease of its business premises. Shortly thereafter, it was evicted from its premises. When this occurred, it left certain tangible personal property on the premises.

On March 1, 1996, Sue's Reclamation & Construction, Inc., leased Azzon, Inc.'s, former business premises from Azzon's former landlord. Also, in March 1996, Sue Politino repossessed equipment which she had leased to Azzon, Inc.

Azzon, Inc. failed to make the payments required under the note with the Merchant's National Bank of Montgomery, West Virginia, and by letter dated August 21, 1996, Merchant's National Bank notified Sue Martin Politino that it was demanding payment in full on the outstanding balance of the note. After receiving the notice, Sue Martin Politino agreed to pledge additional collateral to forestall further action by the bank.

In spite of this, in December 1996, Merchant's National Bank demanded that Sue Martin Politino pay off the note. To forestall further action, Sue Martin Politino, after receiving this notice, on December 9, 1996, paid $44,936.69 as a partial payment on the note.

Thereafter, by letter dated December 18, 1996, the bank notified Sue Martin Politino that it was demanding full payment of the remaining balance of $34,617.45, plus accrued interest. When Sue Martin Politino failed to make the additional payment, the bank repossessed the collateral which she had previously pledged for Azzon's debt. To avoid loss of this collateral, Sue Martin Politino individually borrowed additional funds and paid the bank.

Subsequently, Sue Martin Politino instituted the present action against Azzon, Inc., and John P. and Brenda See, who had co-signed Azzon's note to Merchant's National Bank, claiming, among other things, that she was entitled to subrogation for the amounts which she had paid to the bank to repay her collateral. She did not sue her husband, Rodney Politino, who has also co-signed the note.

In response to Sue Martin Politino's complaint, Azzon, Inc., and John P. and Brenda See filed an answer and a counterclaim in which they made several assertions relevant to the present appeal. First, they alleged that Rodney Politino, as an officer and director of Azzon, Inc., owed Azzon, Inc., and its shareholders, including John See, a fiduciary duty, and that this duty was breached when he had diverted business opportunities to Sue's Reclamation & Construction, Inc., and when he had commenced working for Sue's Reclamation & Construction, Inc.

They also, in effect, alleged that Sue Martin Politino was vicariously liable for Rodney Politino's breaches of fiduciary duty in that she had entered into a civil conspiracy with Rodney Politino to commit the wrongs charged. They implicitly claimed that Sue Politino's vicarious responsibility acted as a bar to her recovery and her subrogation claim.

They alleged that Sue Politino, both actively and vicariously, as a co-conspirator with Rodney Politino, had wrongfully converted

and taken possession of various equipment and assets owned by Azzon, Inc.

They claimed that to allow Sue Politino's subrogation claim would create an unjust result. In essence, they claimed that. the improper conduct of Sue Politino, both personally, and as co-conspirator with Rodney Politino, had impaired Azzon, Inc.'s ability to function and had contributed to their own enrichment, and that to allow Sue Politino to recover on her subrogation claim would result in her own unjust enrichment.

Subsequent to the filing of the initial pleadings, various motions and pleadings and depositions were filed, and ultimately the circuit court granted Sue Martin Politino summary judgment on her subrogation claim against John P. See in the amount of $83,643.53. The court, however, stayed enforcement of the order pending a resolution of the remaining claims in the case.

On August 31, 2000, the circuit court granted Sue Martin Politino summary judgment on the remaining issues affecting her right to recovery in the case. The court made a number of findings and reached a number of conclusions relevant to the present appeal. First, the court found that there was no evidence that the Politinos or Sue's Reclamation & Construction, Inc., had diverted any business opportunities from Azzon, Inc. Specifically, the court noted that the record was totally void of evidence suggesting that after Rodney Politino ceased working for Azzon, Inc., Azzon, Inc., made any effort whatsoever to obtain new contracts or to bid on new jobs, and the court said: "As a matter of law, Azzon cannot have been deprived of corporate opportunities that it never sought."

Second, the court concluded that the only benefit which inured to Sue's Reclamation & Construction, Inc., or to Sue Martin Politino from Rodney Politino came from the work which Rodney Politino did for Sue's Reclamation & Construction, Inc., and inferred that any wrongdoing associated with this was the wrongdoing of Rodney Politino rather than Sue Martin Politino.

The court found that there was no evidence of a civil conspiracy on the part of Sue Martin Politino and Rodney Politino and inferred that in the absence of such a conspiracy, any wrongdoing on the part of Rodney Politino could not be imputed to Sue Martin Politino so as to effect Sue Martin Politino's subrogation claim.

The court found that the property which was the subject of Azzon, Inc.'s conversion claim consisted of equipment which was left by Azzon, Inc., at its leased premises following its eviction as a tenant. The court concluded that the property had been abandoned and, in essence, concluded that Azzon, Inc., had not retained such rights in it as would support a claim of conversion.

Finally, the court suggested that the only benefit which Sue Politino had derived from the overall situation was the benefit of Rodney Politino's efforts on behalf of Sue's Reclamation & Construction, Inc., and that benefit was not due, either directly or vicariously, to Sue Martin Politino's wrongdoing.

Accordingly, the court granted Sue Martin Politino summary judgment and entered the order from which Azzon, Inc., and John P. and Brenda See now appeal.

## II.

## STANDARD OF REVIEW

■ In Syllabus Point 4 of *Aetna Casualty and Surety Company v. Federal Insurance Company of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963), this Court stated: "If there is no genuine issue as to any material fact summary judgment should be granted but such judgment must be denied if there is a genuine issue as to a material fact."

## III.

## DISCUSSION

### A.

*The Conspiracy Claim and the Attribution of Rodney Politino's Wrongdoing to Sue Martin Politino*

■ On appeal, one of Azzon, Inc.'s, principal assertions of error is that the trial court erred in granting summary judgment on its civil conspiracy claim because it claims that it

did introduce sufficient evidence to show that there was a civil conspiracy between Sue Martin Politino and Rodney Politino.[1]

This Court has recognized the concept of a civil conspiracy, and in *Dixon v. American Industrial Leasing Company*, 162 W.Va. 832, 253 S.E.2d 150 (1979), adopted the definition of civil conspiracy set forth in 15A C.J.S. Conspiracy § 1(1). The Court stated:

> As succinctly stated in 15A C.J.S. Conspiracy, Sec. 1(1), a civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means.

*Id.* at 834, 253 S.E.2d at 152.

The law on civil conspiracy recognizes a distinction between a combination which is motivated by the malicious desire to destroy another's business and one motivated by the simple desire to compete and engage in business. As stated in 15A C.J.S. Conspiracy § 10(1): "There is a clear distinction between acts which have inducement in malice or ill-will and those which have inducement in business competition and rivalry; the latter are legal competitions and the former are not." Where two or more people combine together simply for the purpose of engaging in business competition and rivalry, the combination cannot be considered a civil conspiracy. "On the other hand, where persons combine not for the purpose of protecting or advancing their own legitimate interests but for the purpose of injuring another in his trade or business, they are guilty of an unlawful conspiracy which, when executed and when damage results therefrom, is actionable . . . ." 15A C.J.S. Conspiracy § 10(1). In effect, where the purpose of the combination and competition is a malicious purpose, that is, to destroy another's trade or business, as opposed to simply competing with the other, then a civil conspiracy may legally be found.

There is a conflict in the evidence as to why Sue's Reclamation & Construction, Inc., was organized. On the one hand, its charter provisions would seem to indicate that it was to engage in reclamation work. On the other hand, there is evidence suggesting that Sue's Reclamation & Construction, Inc., was originally organized for tax purposes to receive the payments which were due to Sue Martin Politino personally from Azzon, Inc., for her lease of her personal equipment to Azzon, Inc. However, it is clear that shortly after Sue's Reclamation & Construction, Inc., was formed, the affairs of Azzon, Inc., went into a steep decline. By December 1995, some two weeks after Sue's Reclamation & Construction, Inc., had been incorporated, Azzon, Inc., had defaulted on the lease of its business premises and had ceased to seek new business. Although it continued to finish up certain work in progress, it did not seek, or bid for, new work. And it appears from the deposition of John P. See that this was attributable to Mr. See's inaction rather than the activity of Rodney Politino. Mr. See testified:

> Q. Now, I understand from what you said earlier that you were primarily responsible for bidding jobs for Azzon?
>
> A. [MR. SEE] Yes, sir.
>
> Q. Okay. So why is it that Azzon wasn't able to continue bidding for jobs . . . ?
>
> A. Well, we could have, but I couldn't see any point in it.

Sue Martin Politino, when questioned about what she believed when Sue's Reclamation & Construction, Inc., was organized, testified: "I didn't expect Azzon to eventual-

---

1. The establishment of the civil conspiracy in this case is critically important to Azzon, Inc., because this action was originally brought on the personal claim of Sue Martin Politino. There is a suggestion of wrongdoing on the part of Rodney Politino, but his wrongdoing is relevant to this appeal, and can have some bearing on Sue Martin Politino's personal claim, only if the wrongdoing can in some way be imputed to Sue Martin Politino. If it is not also her wrongdoing, it cannot bar her claim. Azzon, Inc., has at- tempted to impute the wrongdoing of Rodney Politino to Sue Martin Politino through the civil conspiracy theory which, in essence, hold that one civil conspirator is responsible for the acts of the other co-conspirator. The court, in discussing Rodney Politino's alleged wrongdoing in the present case, does so insofar as it affects Sue Martin Politino's liability. It does not focus on any potential liability of Rodney Politino personally.

ly go on, and I have at the time four children to feed."

These facts, the Court believes, suggest that at the time Sue's Reclamation & Construction, Inc., actually began engaging in business, Azzon, Inc., was a failing concern and that John P. See himself perceived that it was futile to continue. Additionally, they show that the motivation for the formation of Sue's Reclamation & Construction, Inc., was not the desire to damage or destroy Azzon, Inc., but rather the desire on the part of the organizers of Sue's Reclamation & Construction, Inc., to establish a successful business. In effect, the Court believes that the record show that there was a simple business motive behind what occurred.

In light of the fact that the law recognizes that combinations which have inducement in business competition and rivalry only, rather than inducement in malice or ill-will, are legal combinations and not civil conspiracies, this Court believes that the circuit court properly concluded that the civil conspiracy claim asserted by Azzon, Inc., was not supported by the evidence and that summary judgment rejecting the claim was appropriate.

## B.

### *The Conversion Claim*

█ In addition to claiming that, because of the civil conspiracy, Sue Politino was vicariously responsible for the breaches of fiduciary duty committed by Rodney Politino, Azzon, Inc., and John P. and Brenda See claim that Sue Politino, both actively and vicariously as a co-conspirator with Rodney Politino, wrongfully converted and took possession of various assets owned by Azzon, Inc.

As previously stated, this Court believes that the documents filed fail to demonstrate a civil conspiracy. The remaining question in the present allegation is, therefore, whether there is a material question of fact as to whether Sue Politino personally converted the property in question.

This Court has indicated that any distinct act of dominion wrongfully exerted over property of another, and in denial of his rights, or inconsistent therewith, may be treated as conversion. *Rodgers v. Rodgers*, 184 W.Va. 82, 399 S.E.2d 664 (1990).

Information concerning the alleged conversion in the present case is contained in the deposition of John P. See taken on September 9, 1999. In that deposition, Mr. See described the equipment in question as being a generator, a fuel truck, a lowboy trailer, and a box trailer. The questioning of Mr. See proceeded as follows:

Q. Were those—Were those pieces of property, were they all titled in Azzon's name?

A. [MR. SEE] I know the fuel truck was.

Q. Just tell me in your own words what happened to them and how did that come about that Azzon lost them and the Politino's got them.

A. Well, in 1996, I guess in January 1996, we were more or less evicted from Azzon. When I say we, the shop area that we had leased, for nonpayment of lease, so-to-speak, because, as I indicated, we didn't have the cash flow to do that.

Q. Who was your landlord?

A. Triple B Equipment, I believe it was.

Q. Did either you or Mr. Politino have any connection with that company?

A. No, sir.

Q. Okay. So you all were evicted from the premises in January of '96, and then what happened?

A. Well, as far as from what I understand, Sue Politino took over the—

Q. You can go ahead—

A. —rent, so-to-speak.

Q. —and just tell me what your understanding is.

A. That's my understanding.

Q. Your understanding is she took over what?

A. The lease of that.

Q. Those premises?

A. Right. And this is where the equipment was located, so-to-speak.

Q. So the equipment just stayed there?

Q. Yes, sir.

Q. And thereafter, you haven't seen it since then.

A. No, sir.

Q. Is that what you're saying?

A. Yes, sir.

Q. And so it's your understanding and belief and assumption that Sue Politino or her company or Rodney or some combination of them had control over the equipment and that they must have used the equipment after that.

A. Yes, sir.

Q. Do you know for a fact whether or not they actually used the equipment, or could it have just sat there for years?

A. I don't know for a fact, no. Well, like I said, I do know to a degree, but I can't say.

Q. What?

A. I can't say definitely.

Q. Well, do you have it—Let me ask it this way. Do you have any reason to believe that they actually used or employed any of this equipment?

A. Yes, sir.

Q. Why do you believe that they did?

A. Well, because the status of the lowboy trailer that Azzon, Inc., was purchasing from—John Deere?

MR. NELSON: Yeah, I think that's right.

THE WITNESS:—John Deere. Mr. Politino had that in his control and he was, as far as I know, utilizing the trailer to haul Sue's Reclamation's equipment around to different jobs. The lowboy was repossessed by John Deere, and they had problems locating where it was at.

BY MR. COLLIAS:

Q. So it's your understanding that the lowboy was repossessed by John Deere then?

A. Yes, sir.

The testimony of Mr. See proceeded as follows:

Q. Now, these items that we've talked about just to clarify, the Mack truck and the generator and the fuel truck and the lowboy and the box trailer, those all belong to Azzon?

A. Corporation, yes, sir.

Q. Right. Okay. Is there any reason that, when Azzon was evicted, that Azzon couldn't have taken all these vehicles and this property and all and taken it and moved it off the premises? I assume your landlord wanted it off the premises?

A. Uh-huh. He demanded we take it off the premises.

Q. Why didn't Azzon do that?

A. Why didn't Azzon do that? How can I say that? I don't really know why we didn't do it, to be honest with you. I should have had them buy it.

The deposition of Rodney Politino indicates that on a couple of occasions, Sue's Reclamation & Construction, Inc., used the lowboy trailer and that it was ultimately repossessed by a lender because of Azzon, Inc.'s, default on a loan after Mr. See, according to his own testimony, had tried to arrange for Rodney Politino, or Sue's Reclamation & Construction, Inc., to assume the loan.

The circuit court concluded that this evidence showed that Azzon, Inc., abandoned the equipment in question when it was evicted from the leased premises. This is borne out by the evidence. Although there is some suggestion Sue's Reclamation & Construction, Inc. may have used the lowboy trailer on a couple of occasions, in this Court's opinion, there is no evidence that Sue Politino personally assumed control over, or ever personally exercised dominion over the property in question. Even if the circuit court improperly found that the property was abandoned, there is no evidence that Sue Politino committed an act which would amount to conversion.

C.

*The Claim that the Judgment Creates an Unjust Remedy*

██ The Court notes that Azzon, Inc., and John P. and Brenda See also claim that the

circuit court erred in granting Sue Martin Politino summary judgment on her subrogation claim because there was evidence that the judgment would create unjust enrichment. Azzon, Inc., and John P. and Brenda See point out that it is well settled in West Virginia that the right of subrogation is equitable and that, as such, it will not be allowed except where the subrogee has a clear case of right and no injustice will be done to another. *Ray v. Donohew*, 177 W.Va. 441, 352 S.E.2d 729 (1986). In conjunction with this, Azzon, Inc. and John P. and Brenda See, in effect, argue that any breach of fiduciary relationship by Rodney Politino should, in effect, be imputed to Sue Martin Politino by virtue of the civil conspiracy which has already been discussed.

In view of the fact that this Court has concluded that the facts fail to show a civil conspiracy, as that is contemplated under the law, this Court does not believe that any breach of fiduciary duty, or inequitable conduct, on the part of Rodney Politino can properly be attributed to Sue Martin Politino, and since Sue Martin Politino is the subrogee involved in the present case, any inequity involved in the conduct of Rodney Politino cannot be invoked to preclude Sue Martin Politino's recovery on her subrogation claim.

### D.

#### *The Double Recovery Claim*

■ Finally, Azzon, Inc., and John P. See claim that the circuit court's summary judgment order is improper because it allows Sue Martin Politino a double recovery.

In conjunction with this, Azzon, Inc., and John P. and Brenda See point out that the loan of Azzon, Inc., which Sue Martin Politino ultimately repaid, was personally guaranteed not only by John P. See, but also by both by the Sees and by Sue Martin Politino's husband, Rodney Politino. Azzon, Inc., and John P. and Brenda See argue that beginning in 1996 and through 1997–1998, Sue Martin Politino used the services and labor of her husband, the co-obligor, Rodney Politino, in conjunction with the operation of Sue's Reclamation & Construction, Inc., and

that Rodney Politino received no compensation for his efforts.

During the taking of her deposition, Sue Martin Politino was, in effect, asked why she had not joined her husband, Rodney Politino, as a party defendant in her action seeking subrogation. She responded:

A. His—Him not receiving a salary, to me, is, he's paid in full, because he has worked so hard—

Q. Okay.

A. (continuing) to keep everything going, and me keeping what belong to me and my first husband.

Azzon, Inc. and John P. and Brenda See are apparently equating this statement to being an acknowledgment by Sue Martin Politino that the subrogation claim which she had had been fully satisfied. They proceed to state in their brief: "Having elected and received payment on the debt from one guarantor, Ms. Politino cannot seek recovery on this debt from anyone else." They go on to argue that if the circuit court's judgment that they pay Sue Martin Politino, as subrogee, is allowed to stand great injustice will occur. Ms. Politino will be allowed to recover twice for the same obligation.

This Court believes that the interpretation which Azzon, Inc., and John P. and Brenda See seek to impose on Sue Martin Politino's remarks takes those remarks out of context and is not correct. Sue Martin Politino did not state that she considered the subrogation debt fully paid and satisfied. She told why she had elected not to assert the claim against her husband.

Additionally, the Court believes that the fact that Sue Martin Politino instituted the present action for definite monetary compensation shows that she considered her claims as subrogee unsatisfied. As a consequence, the Court believes that the unjust enrichment claim is without merit.

In view of the foregoing, this Court believes that the trial court properly entered summary judgment in this case and that that judgment should be affirmed.

Affirmed.

ALBRIGHT, Justice, dissenting.

(Filed June 24, 2002)

I must dissent from the majority's conclusion that dismissal of all counterclaims by summary judgment was appropriate in this case. The majority arrived at its decision to affirm the lower court's ruling by construing the civil conspiracy counterclaim proffered by Azzon, Inc. and the Sees as distinct and separate from the other counterclaims asserted, and thereby reduced, if not ignored, the significance of Rodney Politino's fiduciary duty to Azzon, Inc. in relation to the other evidence in the record. Since the evidence is subject to more than one interpretation, summary judgment was not an appropriate disposition of this case.

Despite the characterization by counsel of Mr. Politino's role with Azzon, Inc. as an employee who operated heavy equipment and supervised the work crews at job sites, the evidence established that at all relevant times Mr. Politino was a director, officer and stockholder of Azzon, Inc. As a director and officer of Azzon, Rodney Politino stood in a fiduciary capacity to the corporation which included the duty to maintain "the utmost good faith" in his dealings involving Azzon. *Young v. Columbia Oil Co. of West Virginia,* 110 W.Va. 364, 370, 158 S.E. 678, 681 (1931). Although the majority explains in footnote one that any wrongdoing by Rodney Politino was only relevant to the liability of Sue Politino individually if the claimed wrongdoing could in some way be imputed to her, the majority ignores how the evidence regarding Rodney Politino's actions for Sue's Reclamation & Construction, Inc. (hereinafter "Sue's Reclamation")—while under a fiduciary duty to Azzon—had anything to do with Sue Politino individually. A closer examination of the conspiracy counterclaim as it relates to the alleged conversion of property supports the theory of Mrs. Politino's individual liability.

While not endorsing the circuit court's conclusion with regard to the conversion claim that Azzon's equipment had been abandoned, the majority stated that there was no evidence that Sue Politino personally assumed control or dominion over the equipment and therefore there was no evidence to support a claim of conversion. However, for some unexplained reason[1], the majority did not examine the evidence as the conspiracy-to-convert claim that was asserted. There is adequate evidence in the record to defeat summary judgment of the allegation that Rodney Politino and Sue Politino acted in concert to divert the corporate assets of Azzon, Inc. by using Azzon's equipment with no benefit derived therefrom for Azzon. Based on his deposition and the nature of the work all agreed he performed for Azzon, there is evidence that Rodney Politino knew at the time that the lowboy trailer was used to transport equipment for purposes other than Azzon business that the trailer was the property of Azzon, Inc. If it is proved that Rodney Politino used Azzon's equipment without benefit to Azzon, it may also be found that Rodney Politino breached his fiduciary duty to Azzon. The evidence also supports an inference[2] that Sue Politino, being more than casually familiar with the operations of Azzon, knew that the equipment belonged to Azzon, Inc., that the Azzon equipment was being used to transport her personally owned equipment to further the business of Sue's

1. The majority made an initial determination that the civil conspiracy claim failed because the record supported the singular conclusion that the activities of Sue and Rodney Politino in establishing Sue's Reclamation & Construction, Inc. simply demonstrated a desire to establish a successful and competitive business enterprise rather than an intention to create a rival company for the purpose of damaging or destroying Azzon, Inc. As a result, the majority dismissed substantive consideration of conspiracy as part of the conversion or unjust remedy claims. In its discussion of either of these latter claims, the majority simply curtailed examination of a conspiracy by referring to its previous determination that a conspiracy did not exist. In so doing, the evidence and circumstances were never evaluated as a conspiracy to commit the individual "unlawful overt acts" necessary to prove a civil conspiracy claim. 15A C.J.S. *Conspiracy* § 1(2) (1967).

2. *See* 16 Am.Jur.2d *Conspiracy* § 68 (1998) ("The general rule is that conspiracy liability is sufficiently established by proof showing concert of action or other facts and circumstances from which the natural inference arises that the unlawful, overt acts were committed in furtherance of common design, intention, or purpose of the alleged conspirators.") (footnote omitted).

Reclamation and that no remuneration was paid to Azzon for the use of its equipment. There is evidence that Sue Politino was aware of the fiduciary duty of directors and officers of a corporation because of her position with Sue's Reclamation and knew that Rodney Politino had a fiduciary duty to Azzon when Azzon's equipment may have been used by the Politinos without Azzon's knowledge or authorization. One reasonable conclusion from these facts is that Sue Politino, individually, was part of a conspiracy with Rodney Politino to convert the property of Azzon, making summary judgment of this claim inappropriate. Likewise, a similar interpretation of the evidence regarding the unjust remedy claim may be made.

The conclusion reached by the majority is most troubling because the allegation of breach of fiduciary duty by a corporate officer is never seriously examined, apparently because the person who initiated the suit was not that corporate officer. I appreciate the majority's reluctance to allow inappropriate causes of action to be raised in unrelated or virtually unrelated cases. However, it is clear that the evidence in this case, considered in the light most favorable to the non-moving party, does not support summary judgment on the counterclaims. *Masinter v. WEBCO. Co.,* 164 W.Va. 241, 242, 262 S.E.2d 433, 435 (1980). As we stated in *Aetna Casualty and Surety Co. v. Federal Insurance Co.,* 148 W.Va. 160, 133 S.E.2d 770 (1963), "[t]he question to be decided on a motion for summary judgment is whether there is a genuine issue of fact and not how that issue should be determined." *Id.* at 171, 133 S.E.2d at 777. It is quite unfortunate that this distinction has been overlooked by the majority.