**Deborah K. JOHNSON, personal representative of the ESTATE OF David S. Johnson, deceased, Plaintiff,**

v.

**ACCEPTANCE INSURANCE COMPANY/Acceptance Indemnity Insurance Company and Equity Insurance Managers, Inc., Defendants.**

No. CIV.A.3:01 CV 82.

United States District Court,
N.D. West Virginia.

Sept. 19, 2003.

Kevin S. Kaufman, Bridgeport, WV, Avrum Levicoff, Ryan J. King, Brown & Levicoff, PC, Pittsburgh, PA, for plaintiff.

William A. Kolibash, Phillips, Gardill, Kaiser & Altmeyer, Wheeling, WV, Walter M. Jones, III, Allison Ann Marquina, Martin & Seibert, Martinsburg, WV, Patricia L. Dodge, Edward A. Smallwood, Meyer,

Unkovic & Scott, Pittsburgh, PA, for defendants/third–party plaintiffs.

William A. Kolibash, Phillips, Gardill, Kaiser & Altmeyer, Wheeling, WV, Susan K. Dirks, Christopher P. Bastien, Bastien & Martin, L.C., Charleston, WV, for third–party defendant.

*MEMORANDUM OPINION AND ORDER CONFIRMING PRONOUNCED ORDER OF THE COURT DENYING DEFENDANT EQUITY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PHASE ONE, GRANTING DEFENDANT ACCEPTANCE'S MOTION TO DISMISS FIRST–PARTY UNFAIR CLAIM SETTLEMENT PRACTICES ACT CLAIM, DENYING DEFENDANT ACCEPTANCE'S MOTION FOR SUMMARY JUDGMENT ON PHASE ONE, GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PHASE ONE, GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING EQUITY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PHASE TWO, GRANTING IN PART AND DENYING IN PART ACCEPTANCE'S MOTION FOR SUMMARY JUDGMENT ON PHASE TWO, DENYING AS MOOT EQUITY'S MOTION TO BIFURCATE, GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE ADDITIONAL AUTHORITIES AND GRANTING PLAINTIFF'S MOTION FOR LEAVE TO CORRECT TYPOGRAPHICAL ERROR*

STAMP, District Judge.

### I. *Procedural History*

Plaintiff, Deborah K. Johnson, filed this action on behalf of the estate of her brother, David S. Johnson, deceased, against defendants, Acceptance Insurance Company/Acceptance Indemnity Insurance Company ("Acceptance") and Equity Insurance Managers, Inc. ("Equity"), asserting various causes of action relating to the insurance policy Acceptance issued to its insured, Behavioral Health Associates, Inc. ("BHA").[1] By previous order of the Court,[2] the case has been bifurcated into two phases: Phase One relates to whether the insurance policy issued by Acceptance provides coverage in the underlying claim and Phase Two relates to all other remaining claims.

On March 17, 2003, Equity filed a motion for partial summary judgment on Phase One in which they joined in Acceptance's motion for summary judgment.[3] No response has been filed by either plaintiff or Acceptance to Equity's motion. On that same date, Acceptance filed a motion for summary judgment on Phase One[4] and a motion to dismiss the first-party Unfair Claim Settlement Practices Act claim ("bad faith claim").[5] No response was filed to Acceptance's motion to dismiss the first-party bad faith claim. On April 21, 2003, plaintiff filed a response to Acceptance's motion for summary judgment on Phase One.[6] Also on March 17, 2003, plain-

---

1. On May 24, 2002, Acceptance and Equity filed a third-party complaint against Arndt–McBee (Docket No. 31). This Court granted Arndt–McBee's motion to dismiss the third-party complaint on March 19, 2003 (Docket No. 241).

2. Docket No. 140.

3. Docket No. 234.

4. Docket No. 236.

5. Docket No. 235.

6. Docket No. 248.

tiff filed her motion for summary judgment on Phase One,[7] to which Acceptance responded on April 17, 2003.[8]

Equity filed a motion for summary judgment on the Phase Two claims on July 21, 2003[9] and Acceptance filed its motion for summary judgment on the Phase Two claims on July 22, 2003.[10] Plaintiff responded to both motions on August 5, 2003.[11] On August 7, 2003, Equity filed a motion to bifurcate the trial.[12] Acceptance filed a response on August 14, 2003, in which it joined in Equity's motion to bifurcate the trial.[13] On August 25, 2003, plaintiff filed a response opposing Equity's motion to bifurcate the trial.[14]

Plaintiff has filed the following motions to which neither Equity nor Acceptance have responded: for leave to file supplemental memorandum in support of motion for partial summary judgment and in opposition to Acceptance's motion for summary judgment on June 18, 2003,[15] for leave to file additional authorities on August 11, 2003,[16] and for leave to correct typographic error on August 14, 2003.[17]

The parties have fully briefed the issues presented, the court has considered the pleadings, submissions, and applicable law, and the pending motions are ripe for decision. For the reasons set forth below:

1. Equity's motion for partial summary judgment (Phase One) is DENIED,

2. Acceptance's motion to dismiss first-party Unfair Claim Settlement Practices Act claim is GRANTED,

3. Acceptance's motion for summary judgment (Phase One) is DENIED,

4. Plaintiff's motion for partial summary judgment (Phase One) is GRANTED,

5. Plaintiff's motion for leave to file supplemental memorandum in support of motion for partial summary judgment is GRANTED,

6. Equity's motion for partial summary judgment (Phase Two) is GRANTED,

7. Acceptance's motion for summary judgment (Phase Two) is GRANTED in part and DENIED in part,

8. Equity's motion to bifurcate trial is DENIED as moot,

9. Plaintiff's motion for leave to file additional authorities is GRANTED, and

10. Plaintiff's motion for leave to correct typographical error is GRANTED.[18]

## II. *Facts*

This action arises out of an underlying wrongful death action involving plaintiff and BHA that was filed in the Circuit Court of Harrison County, West Virginia in 1997. In the mid 1990s, BHA was in the business of providing residential living services and other behavioral health services to adult individuals who required supervision and mental health treatment. In

7. Docket No. 237.

8. Docket No. 247.

9. Docket No. 264.

10. Docket No. 266.

11. Docket Nos. 270 and 271.

12. Docket No. 272.

13. Docket No. 280.

14. Docket No. 285.

15. Docket No. 256.

16. Docket No. 275.

17. Docket No. 279.

18. This memorandum opinion and order reiterates and expands, in small part, upon this Court's rulings issued at the status and scheduling conference held on August 29, 2003.

August 1995, BHA's president, Parvis A. Farudi, contacted Arndt–McBee Insurance Agency, Inc. ("Arndt–McBee"), a Martinsburg, West Virginia independent insurance agent, about acquiring a general liability insurance policy for BHA. Arndt–McBee then contacted Equity, a managing general agent, to inquire about obtaining coverage for BHA. Equity then contacted Acceptance and inquired about obtaining coverage from Acceptance for BHA. Equity then issued, on behalf of Acceptance, a commercial general policy with coverage limits of $1 million per occurrence and $2 million aggregate. The policy term was from August 4, 1995 to August 4, 1996.

The policy included an endorsement which made coverage subject to a professional services exclusion. The professional services exclusion provided that any liability arising from rendering or failing to render a professional service would be excluded from coverage. That exclusion also referred to an attached schedule that described other professional services that were also excluded from the policy. The sole professional service listed on the attached schedule was for the operation of a group home. At the time the policy was issued, it is contended that BHA intended to operate a group home to house its mentally disabled clients. In September 1995, BHA notified Arndt–McBee that it had not opened the group home. Thus, it is contended that the provision was removed and coverage for the group home was eliminated from the policy.

For several years prior to the time BHA was attempting to acquire insurance coverage for its facilities, the plaintiff's decedent, David S. Johnson, lived in various mental health treatment facilities due to his mental illness. In Spring 1995, plaintiff's decedent was transferred from a facility in Clarksburg, West Virginia to the care of BHA, which operated facilities to house mentally disabled individuals in the Martinsburg, West Virginia area. Mr. Johnson was placed in the Kountry Kove apartments in Martinsburg which was owned and operated by BHA. On October 12, 1995, Mr. Johnson left the Kountry Kove apartments to walk to a nearby convenience store. While walking along West Virginia Route 11, Mr. Johnson was struck by a car and sustained life threatening injuries. For several months after the accident, Mr. Johnson received intensive medical treatment. Mr. Johnson died in March 1996 as a result of the injuries sustained in the accident.

In 1997, the estate brought a wrongful death action in the Circuit Court of Harrison County against BHA for negligence. Pursuant to Rule 12(a)(1) of the West Virginia Rules of Civil Procedure, BHA filed a notice of a *bona fide* defense. In the meantime, BHA contacted Arndt–McBee about the case. Arndt–McBee contacted Equity, who then notified Acceptance about the lawsuit. Acceptance, less than three weeks after receiving the complaint and without investigation, issued a letter dated September 26, 1997, denying coverage based upon the professional services exclusion. Thereafter, Acceptance did not participate in the defense of the lawsuit on behalf of its insured, BHA. BHA also did not participate in the suit after the filing of the notice of a *bona fide* defense. As a result, a default judgment of liability was entered against BHA by the state court in October 1998. In April 2001, plaintiff and BHA entered into a settlement agreement whereby the parties agreed that plaintiff would not attempt to execute on the judgment against BHA's assets in exchange for an assignment of all of BHA's rights against Acceptance and Equity. Plaintiff and BHA then stipulated certain facts to the Circuit Court of Harrison County for the Court to determine damages. That court considered the stipulation, the case record, and entered judgment for plaintiff

against BHA on November 5, 2001 in the sum of $2,250,000.

On November 20, 2001, plaintiff brought the instant action in this Court alleging: that the policy affords coverage, that the policy is ambiguous, that Acceptance breached its duty to defend the underlying claim, that Acceptance breached the policy, that Acceptance breached its duty of good faith and fair dealing, that there was a first-party and third-party violation of the West Virginia unfair claim settlement provision of the West Virginia Unfair Trade Practices Act ("UTPA"), West Virginia Code § 33–11–1, *et seq.,* and that civil conspiracy existed. Plaintiff also asserts the following causes of action against Equity: unlawful procurement of an insurance policy in violation of West Virginia Code § 33–3–20(e), fraud and civil conspiracy, violation of the UTPA as to the issuance of the policy to BHA, and violation of the UTPA as to a general business practice.

### III. *Applicable Law*

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." *Temkin v. Frederick County Comm'rs,* 945 F.2d 716, 718 (4th Cir.1991), *cert. denied,* 502 U.S. 1095, 112 S.Ct. 1172, 117 L.Ed.2d 417 (1992)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). However, as the United States Supreme

Court noted in *Anderson,* "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256, 106 S.Ct. 2505. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505; *see also Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979) ( [s]ummary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law")(quoting *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950)).

In *Celotex,* the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. *Oksanen v. Page Mem'l Hosp.,* 912 F.2d 73, 78 (4th Cir. 1990), *cert. denied,* 502 U.S. 1074, 112 S.Ct. 973, 117 L.Ed.2d 137 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## IV. Discussion

### A. Phase One—Coverage Under the Acceptance Policy

This Court has previously bifurcated this case into two phases. The question that must be resolved in Phase One is whether the Acceptance policy affords coverage to BHA in regard to the incident involving plaintiff's decedent.

#### 1. Assignment of the Underlying Judgment

The parties have raised in their respective pleadings what this Court believes is a threshold issue: whether West Virginia law allows for the assignment of the underlying court judgment by BHA to plaintiff.

■ Although there does not appear to be any case precisely on point as to this legal issue, two cases exist which lead this Court to believe that the West Virginia Supreme Court of Appeals would find that the assignment from BHA to plaintiff is permissible. In *Boarman v. Boarman*, 210 W.Va. 155, 556 S.E.2d 800, 802 (2001), the trial court ordered an award of attorney's fees to Mrs. Boarman as the result of her divorce action. Mrs. Boarman assigned the fee award to her first attorney, Mr. Wilkes, who sought to recover the fees that were owed to him. In discussing the assignment, the West Virginia Supreme Court of Appeals stated that:

> It is a well established principle that judgments are akin to property, and as such, may be assigned to another party: [a]n assignment may be made of a judgment, even if the claim which is later reduced to a money judgment was unassignable, because a court judgment is considered property which may be transferred, like other property, even prior to payment of the judgment.

*Id.* at 803 (citations omitted). The court stated further that there is a "basic presumption that a valid judgment may be assigned to a third person." *Id.* In *Boarman*, unlike the situation here where BHA's assignment was to the party who obtained the judgment, the assignment was to a third person who was not a party in the litigation. Moreover, the West Virginia Supreme Court more recently issued a decision where it found that the assignment of a legal malpractice claim was void as against public policy. *Delaware CWC Liquidation Corp. v. Martin*, 213 W.Va. 617, 584 S.E.2d 473 (2003). The court found that the assignment was not appropriate within the context of the "highly personal attorney-client relationship." *Id.* at 479. The assignment in this case, however, does not involve an attorney-client relationship. Rather, the assignment from BHA to plaintiff is factually similar to the judgment that the court determined was assignable in *Boarman*. Therefore, the Court believes that the West Virginia Supreme Court would hold that the assignment of the judgment by BHA to plaintiff is permissible under West Virginia law.

#### 2. Validity of Underlying Court Judgment

Another issue in dispute is whether the settlement between plaintiff and BHA, and the resulting judgment entered by the Harrison County Circuit Court, is valid. Acceptance argues that the underlying judgment cannot be enforceable against it because it was procured by fraud and collusion and is invalid under the authority of *Mayor and City Council of Baltimore v. Utica Mut. Ins. Co.*, 145 Md.App. 256, 802 A.2d 1070 (Md.2002). In *Mayor and City Council of Baltimore*, the court held that an underlying judgment was not enforceable if it was determined that the agreement was procured by fraud or collusion and if the settlement upon which the judgment was based was not reasonable and prudent. *Id.* at 1085.

■ This Court does not agree with Acceptance and finds no fraud or collusion in the underlying settlement and that the judgment entered by the Circuit Court of Harrison County is not unreasonable under the circumstances. First, Acceptance has not presented any credible evidence to support its theory that the judgment was the result of fraud or collusion between plaintiff and BHA.

Second, plaintiff's decedent's medical expenses from the time of the accident in October 12, 1995, until his death on March 7, 1996, were $338,790.00. Pl.'s Mem. Supp. Partial Summ. J., Ex. O. Thus, in light of the actual medical costs incurred, the age of plaintiff's decedent at the time of the accident, the pain and suffering incurred by plaintiff's decedent and his family from the time of the accident until his death, and the potential liability faced by BHA, this Court finds that the judgment is not unreasonable.

Acceptance also asserts that it was entitled to notice of BHA's default judgment prior to the award of damages by the circuit court. Acceptance argues that since it was not notified of the judgment and given an opportunity to contest it, the damages award is null and void. This Court finds, however, that Acceptance is not entitled to notice of proceedings before the Circuit Court of Harrison County because Acceptance never appeared in the case, having denied coverage and having failed to defend its insured (even under a reservation of rights). This Court also notes that Acceptance could have but did not file a declaratory judgment proceeding to have the court determine coverage. Therefore, its argument that it is entitled to notice of the proceedings before the circuit court is unpersuasive.

3. *Duty to Defend*

■ In addition, the parties dispute whether Acceptance had a duty to defend under the insurer-insured relationship. The law in West Virginia is well-settled: an insurer has a duty to defend its insured and this duty is "broader than the obligation to provide coverage." *Butts v. Royal Vendors, Inc.*, 202 W.Va. 448, 504 S.E.2d 911, 916 (1998) (quoting *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 376 S.E.2d 581, 584 (1988)). In addition, "[w]hen there is any question about an insurer's duty to defend under an insurance policy, such question 'must be construed liberally in favor of an insured.'" *Id.* (quoting *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156, 160 (1986)).

■ In this case, Acceptance did nothing more than review the complaint, determine on the basis of the complaint that the claim was not covered by the terms of the policy, and send a letter denying coverage. Acceptance's actions are impermissible under the established law which holds that it had a duty to defend its insured. Therefore, Acceptance breached its duty to defend.

4. *Coverage*

■ This Court now turns to the central question in Phase One: whether the Acceptance policy provided coverage to the underlying incident involving plaintiff's decedent. This Court finds that the policy does provide coverage. Acceptance argues that the professional services exclusion applies because the plaintiff's decedent resided in a group home at the time of his death and that a group home was specifically excluded from coverage. The plaintiff has presented some evidence that supports her contention that the group home designation was dropped from the coverage on September 26, 1995 retroactive to the first day the policy was in effect, August 4, 1995. Pl.'s Mem. Supp. Mot. Partial Summ. J., Ex. C. at 125. However, it is

unclear whether the provision in the policy excluding coverage for a group home was dropped after the policy was issued. Thus, there may be a genuine issue of material fact as to whether this provision was part of the policy that was in effect at the time of the plaintiff's decedent's death.

■ Any such factual dispute is immaterial however, because even assuming that plaintiff's decedent was residing in a group home, this Court finds that the services rendered to Mr. Johnson at, and just prior to, the time of his injuries were not professional services to which the policy exclusion would then apply. This Court finds that the services rendered to plaintiff's decedent while he was under BHA's care were merely supervisory and custodial in nature. "An insurance company seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of the exclusion." *McMahon* at 496. Here, there is no clear indication in the record to suggest that the plaintiff's decedent had previously received services rendered by a medical or psychological professional during the time he was living at the Kountry Kove apartments or on the day he was injured. However, even if there is such evidence, there is no indication in the record that the rendering or failure to render a professional service was causally connected to the accident.

Moreover, the term "professional services" is not defined within the policy. Case law supports the proposition that the term "professional services" denotes those services rendered by someone with particularized knowledge or skill in his or her chosen field. *See Atl. Lloyd's Ins. Co. of Texas v. Susman Godfrey, LLP,* 982 S.W.2d 472, 476 (Tex.App.1998) (holding that "[t]o qualify as a professional service, the task must arise out of acts particular to the individual's specialized vocation"); *Chapman v. Mut. Serv. Cas. Ins. Co.,* 35

F.Supp.2d 693, 698 (E.D.Wis.1999) (defining professional service as "[a]cts or services involving specialized knowledge, labor or skill which is predominately mental or intellectual rather than physical or manual") (citation omitted); *see also State Auto. Mut. Ins. Co. v. Alpha Eng'g Servs., Inc.,* 208 W.Va. 713, 542 S.E.2d 876, 880 (2000) (holding that a professional services exclusion that defined the service at issue as "preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications and supervisory, inspection or engineering services" was not ambiguous). In light of this definition of "professional services," the Court finds that plaintiff's decedent's injuries were not the cause of the failure to render any type of professional service as that term is commonly understood and legally defined.

■ In any event, since the policy does not provide an explicit definition of "professional services," this Court finds that the term "professional services" in this policy is ambiguous. Ambiguities in insurance policies are construed against the insurer. *Aetna Cas. & Sur. Co. v. Pitrolo,* 342 S.E.2d at 160; *see also Beard v. Indem. Ins. Co.,* 65 W.Va. 283, 64 S.E. 119, 122 (1909) (stating that "the rule is firmly established that limitations on the liability of the company are construed most strongly against the insurer or liberally in favor of the insured"). Therefore, since that term is ambiguous, it must be construed against Acceptance.

### 5. Policy Limits

■ The next issue that must be addressed is whether plaintiff may recover the entire amount of the judgment or whether plaintiff may only recover up to the policy limits—$1 million per occurrence and $2 million aggregate. There does not appear to be any case in West

Virginia addressing this issue. However, this Court is persuaded by the holdings in two cases with similar factual situations as this case. *See In re Tutu Water Wells Contamination Litig.*, 78 F.Supp.2d 423 (1999); *Willcox v. American Home Assurance Co.*, 900 F.Supp. 850 (S.D.Tex.1995). In both *Tutu Water Wells* and *Willcox,* the parties entered into a consent judgment with a covenant not to execute and the damages awarded in the judgment exceeded the policy limits. *Tutu Water Wells,* 78 F.Supp.2d at 426; *Willcox,* 900 F.Supp. at 854. In both cases, the courts refused to enforce the judgment in excess of the policy limits. *Tutu Water Wells,* 78 F.Supp.2d at 433; *Willcox,* 900 F.Supp. at 857. In *Willcox,* the court held that the "existence of a covenant not to execute . . . precludes recovery in excess of policy limits." *Id.* at 857. The *Willcox* court stated:

> To recover more than the policy limits from the insurer, the judgment creditor must assert the insured's injury. If the judgment cannot be enforced against the insured, no such injury exists. The insured may assign to his judgment creditor any claim he has against the insurer for payment of the excess award, but such assigned claim is actionable only as long as the insured remains liable for the excess damages. To allow the creditor to release the insured from liability for such excess damages without effecting the release of the insurer would give the creditor and insured the power unilaterally to extend the insurer's liability. This would defeat, not serve, public policy.

*Id.* (quoting *Whatley v. City of Dallas,* 758 S.W.2d 301, 310 (Tex.App.1988)). This Court adopts the approach used in these cases. Therefore, plaintiff may recover on the judgment, but only as far as the policy limits allow.

### 6. Collateral Estoppel

 Finally, Acceptance concedes that under the doctrine of collateral estoppel it would normally be bound by the finding of negligence by the Circuit Court of Harrison County because Acceptance is in privity with its insured, BHA. Acceptance maintains, however, that there is an exception to the privity rule "where the interest of an insured and insurer are antagonistic toward each other in the initial tort adjudication." *See* Def's. Mem. Supp. Summ. J. at 31. Therefore, Acceptance argues that it is not bound by the underlying judgment. In support of its position, Acceptance cites *State Farm Mut. Ins. Co. v. Brown,* 767 F.Supp. 1151, 1153–54 (S.D.Fla.1991). While it may be argued that Acceptance and BHA have adversarial roles here, Acceptance did not appear in the underlying proceedings and, in effect, abandoned BHA by denying coverage and failing to defend its insured. Unlike the *Brown* case where the insurer filed a petition for a declaratory judgment in federal court pursuant to 28 U.S.C. § 2201 seeking to ascertain the rights and duties of the parties under the liability policy, *id.* at 1152, in this case, Acceptance chose not to litigate the underlying case in the Harrison County Circuit Court even though it had a duty to defend its insured. In *Brown,* the insurer took an active position in the case, while here, Acceptance denied coverage and did not defend.

 In West Virginia, collateral estoppel will bar a claim when "the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." *Haba v. The Big Arm Bar & Grill, Inc.,* 196 W.Va. 129, 468 S.E.2d 915, 919 (1996)(citing *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995)). Acceptance had a full and fair opportunity to litigate the issue of negligence in the underlying action and chose

not to pursue that route. Accordingly, the exception to the privity rule is not applicable here and Acceptance is bound by the liability and damages determination by the Circuit Court of Hancock County.

In light of the above discussion, plaintiff's motion for partial summary judgment on Phase One is GRANTED, Acceptance's motion for summary judgment on Phase One is DENIED, and Equity's motion for partial summary judgment on Phase One is DENIED for the same reasons that plaintiff's motion is granted.

### B. *Phase Two—The Remaining Claims Against Equity*

■ The remaining claims against Equity are as follows: (1) unlawful procurement of an insurance policy, West Virginia Code § 33–12–21, (2) fraud and civil conspiracy, and (3) violations of the West Virginia Unfair Trade Practices Act. Even assuming that Equity violated the West Virginia insurance statutes or regulations, or both, there has been no evidence presented that creates a genuine issue of material fact that Equity's acts or omissions, if any, proximately caused any damages to plaintiff. The facts are that BHA sought an insurance policy which it ultimately procured from Acceptance. Equity merely served as a facilitator of that transaction in seeking insurance coverage for Acceptance. Thus, Equity did not cause any damages to plaintiff because BHA successfully obtained insurance coverage from Acceptance.

■ Moreover, plaintiff lacks standing to assert claims on behalf of third parties to recover damages for any conduct of Equity as to such third parties. In order to have standing, a party

> [M]ust have suffered an "injury-in-fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second,

there must be a causal connection [between] the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court.

*Findley v. State Farm Mut. Auto. Ins. Co.*, 213 W.Va. 80, 576 S.E.2d 807, 821 (2002) (citing *Coleman v. Sopher*, 194 W.Va. 90, 459 S.E.2d 367, 372 n. 6 (1995)). In this case, there is no causal connection between plaintiff's injuries and Equity's conduct in brokering the sale of the policy issued by Acceptance. Thus, plaintiff lacks standing to assert claims on behalf of third parties that may have suffered injuries, if any, from Equity.

Accordingly, Equity's motion for partial summary judgment on Phase Two is GRANTED. Furthermore, in light of the finding that Equity did not cause any damages to the plaintiff, plaintiff's claim alleging unlawful procurement of an insurance contract is DISMISSED.

### C. *Phase Two—The Remaining Claims Against Acceptance*

### 1. *Duty of Good Faith and Fair Dealing Claim and Third–Party Unfair Claim Settlement Practices Act*

■ Plaintiff alleges that Acceptance violated the West Virginia Unfair Claim Settlement Practices Act, West Virginia Code § 33–11–4(9), which is part of the UTPA, West Virginia Code § 33–11–1, *et seq.* This Court has reviewed the pleadings, depositions, answers to interrogatories, and other submissions, and finds that there are genuine issues of material fact as to: (1) the alleged breach of duty of good faith and fair dealing and (2) the alleged third-party violations of the West Virginia Unfair Claim Settlement Practices Act that must be resolved by the jury because they may reasonably be resolved in favor of either party. *See Temkin v. Frederick*

*County Comm'rs,* 945 F.2d 716, 718 (4th Cir.1991). In addition, Acceptance's conduct subsequent to the filing of this civil action will not be considered, as this Court has so held in *Larck v. Wright,* Civil Action No. 5:01CV81; *see also, Palmer by Diacon v. Farmers Ins. Exch.,* 261 Mont. 91, 861 P.2d 895, 914 (1993); *Palmer v. Ted Stevens Honda,* 193 Cal.App.3d 530, 238 Cal.Rptr. 363, 369 (1987).

■■■ In addition, Acceptance has argued in its motion for summary judgment in Phase Two that plaintiff is not entitled to punitive damages under the Unfair Claim Settlement Practices Act claim because Acceptance's conduct did not rise to the level of malice. The West Virginia Supreme Court of Appeals has held that "an insurer is not liable for punitive damages by its refusal to pay on a claim unless such refusal is accompanied by a malicious intention to injure or defraud." *Hayseeds v. State Farm Fire & Cas.,* 177 W.Va. 323, 352 S.E.2d 73, 80 (1986). The *Hayseeds* court explained: "By 'actual malice' we mean that the company actually knew that the policyholder's claim was proper, but willfully, maliciously and intentionally denied the claim." *Id.* at 80–81, 177 W.Va. 323.

Since *Hayseeds,* the "actual malice" standard has been applied to a third party action against an insurer for unfair settlement practices under West Virginia Code § 33–11–4(9). *See McCormick v. Allstate Ins. Co.,* 202 S.E.2d 454, 458–59 (W.Va. 1988). Applying the "actual malice" standard to determine whether punitive damages should be awarded, this Court finds that there is no genuine issue of material fact that Acceptance acted with actual malice.

Accordingly, Acceptance's motion for summary judgment is DENIED as to the good faith and fair dealing and the third-party Unfair Settlement Practices Act claims and GRANTED as to the claim of punitive damages.

2. *Civil Conspiracy Claim*

Moreover, with regard to the civil conspiracy claim, the West Virginia Supreme Court of Appeals has defined a civil conspiracy as "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." *Politino v. Azzon, Inc.,* 212 W.Va. 200, 569 S.E.2d 447, 451 (2002). In *Politino,* the court drew a distinction between acts intended to inflict harm, which is considered a civil conspiracy, and simply engaging in business conduct intended to further a competitive advantage in the market-place, which is not a civil conspiracy. *Id.* In discussing this distinction, the Court stated that "where persons combine not for the purpose of protecting or advancing their own legitimate interests but for the purpose of injuring another in his trade or business, they are guilty of an unlawful conspiracy which when executed and when damage results therefrom, is actionable." *Id.*

■■■ There is no evidence that Equity and Acceptance conspired to injure either the plaintiff or the insured, BHA. Again, even assuming for the sake of discussion that Equity somehow committed violations of West Virginia insurance laws and regulations, there is no evidence that Equity and Acceptance were doing anything more than combining their efforts for the benefit of their respective legitimate interests: selling insurance products to customers. Moreover, since the Court has already found that any purported conspiracy did not proximately cause any injury to plaintiff, it follows that any purported conspiracy of Acceptance also did not proximately cause plaintiff any damages.

Since there is no genuine issue of material fact as to any civil conspiracy between Equity and Acceptance that may have

caused plaintiff any injury, Acceptance's motion for summary judgment on the civil conspiracy claim is GRANTED.

### 3. First–Party Unfair Claim Settlement Practices Act Claim

Acceptance filed a motion on March 17, 2003 for summary judgment on plaintiff's first-party Unfair Claim Settlement Practices Act claim. Plaintiff has not filed a response. Plaintiff's failure to file a response does not relieve Acceptance from the burden imposed upon the moving party. *See Custer v. Pan Am. Life Ins. Co.,* 12 F.3d 410 (4th Cir.1993). "[T]he failure to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, [however] the moving party must still show the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)).

■■■ The West Virginia Supreme Court of Appeals held in *Klettner v. State Farm Mut. Auto. Ins. Co.,* 205 W.Va. 587, 519 S.E.2d 870, 873 (1999), that the statute of limitations for a first-party claim under the UTPA was "governed by the one-year statute of limitations set forth in West Virginia Code § 55–2–12(c) (1994)."[19] The Court further held that the statute of limitations for a claim under the UTPA begins to run when "the appeal period has expired on the underlying cause of action upon which the statutory claim is predicated." *Id.* at 876. The statutory claim at issue in this case is predicated on Acceptance's unfair settlement practice in denying coverage for the underlying claim. Acceptance denied coverage on September 26, 1997. Therefore, BHA had until September 26, 1998 to file a first-party claim under the statute of limitations. Plaintiff,

asserting the cause of action on behalf of BHA due to the assignment, would have also had until September 26, 1998 to file the first-party claim. Plaintiff filed her first-party claim in November 2001, past the deadline under the statute of limitations. Therefore, plaintiff's claim is barred by the statute of limitations and Acceptance's motion for summary judgment on the first-party claim under the Unfair Claim Settlement Practices Act is GRANTED.

### D. Other Pending Motions

Several other motions are pending before the court which are not substantive in nature. Accordingly, plaintiff's motion for leave to file supplemental memorandum in support of motion for partial summary judgment is GRANTED, plaintiff's motion to correct a typographical error is GRANTED, and plaintiff's motion to file additional authorities is GRANTED. In light of the discussion and rulings above, Equity's motion to bifurcate the trial is DENIED as MOOT.

### V. Conclusion

For the reasons stated above, Equity's motion for partial summary judgment (Phase One) is DENIED, Acceptance's motion to dismiss first-party unfair settlement practices act claim is GRANTED, Acceptance's motion for summary judgment (Phase One) is DENIED, plaintiff's motion for partial summary judgment (Phase One) is GRANTED, plaintiff's motion for leave to file supplemental memorandum in support of motion for partial summary judgment is GRANTED, Equity's motion for partial summary judgment (Phase Two) is GRANTED, Acceptance's motion for summary judgment (Phase

---

19. West Virginia Code § 55–2–12(c) provides that "[e]very personal action for which no limitation is otherwise prescribed shall be brought ... (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative." W. Va.Code § 55–2–12(c).

Two) is GRANTED in part and DENIED in part, Equity's motion to bifurcate trial is DENIED AS MOOT, plaintiff's motion for leave to file additional authorities is GRANTED, and plaintiff's motion for leave to correct typographical error is GRANTED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment as to all claims against Equity Insurance Managers, Inc.