# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Loyd C. Taylor, individually, and
d/b/a L.C. Taylor Enterprises,
Plaintiff Below, Petitioner**

**FILED**

June 22, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 14-0961** (Monroe County 10-C-91)

**Robert W. Ackerman, P.C.,
a Virginia professional corporation,
Robert W. Ackerman, individually,
and Pendleton Community Bank, Inc.,
a West Virginia corporation,
Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioner and plaintiff below, Loyd C. Taylor, individually, and d/b/a L. C. Taylor Enterprises, by counsel John H. Bryan, appeals two orders entered on August 27, 2014, that granted the respective motions for summary judgment filed by respondents and defendants below, Pendleton Community Bank, Inc., a West Virginia corporation ("the Bank"), and Robert W. Ackerman, P.C., a Virginia professional corporation, and Robert W. Ackerman, individually (collectively "Ackerman"). The Bank, by counsel William J. Powell and Vivian H. Basdekis, and Ackerman, by counsel Kermit J. Moore and W. Blake Belcher, filed responses, to which petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In 2005, petitioner and Warren Smith were equal partners in the purchase of the Sweet Springs Resort property, and owned equal interests in Sweet Springs Valley Holdings, LLC, the record owner of the resort property. In May of 2007, Sweet Springs Valley Holdings, LLC; Sweetsommer Water Bottling Co., LLC; and Smith's Beverage Corporation (the "Companies") borrowed $500,000 from the Bank, for which petitioner was a personal guarantor. On appeal, petitioner avers that he "spent hundreds of thousands of dollars over a period of time to allow [Mr.] Smith to continue developing Sweet Springs[;]" that the 2007 loan documents "mentions an unsecured loan from [petitioner] to [Mr.] Smith in the amount of $675,000.00, which the parties agreed to subordinate to the $500,000.00 loan[;]" and that "petitioner was owed substantial amounts of money by [Mr.] Smith as a result of his investments into the Sweet Springs Resort."

1

On August 6, 2007, petitioner and Mr. Smith entered into a private "buy-out" agreement, pursuant to which petitioner conveyed all of his interest (50%) in the Companies to Mr. Smith who, in return, promised to pay petitioner either $3,000,000 or $5,000,000, depending on whether the Companies were successful in entering into a prospective lease. The agreement provided further that if any of the Companies obtained a loan secured by a deed of trust on the Sweet Springs Resort property, petitioner would subordinate his deed of trust to that creditor's lien for payment in the amount of $1,200,000. However, petitioner never recorded a deed of trust and, thus, remained an unsecured creditor of Mr. Smith.

On November 3, 2009, the Bank loaned $2,000,000 to the Companies. As collateral for the loan, the Bank recorded a deed of trust on the Sweet Springs Resort property. Given that petitioner never recorded a deed of trust following the execution of the buy-out agreement in 2007, when the Bank filed its deed of trust in 2009, it took the first priority position on the Sweet Springs Resort property because the original first deed of trust was extinguished when the $500,000 loan that created it was rolled into the 2009 loan. It is undisputed that petitioner's personal guaranty of the 2007 loan was released upon the closing of the 2009 loan.[1]

It is further undisputed that, at the time the loan was made in 2009, petitioner was neither an owner of the Companies nor authorized to act on their behalf. Mr. Smith, the sole member of the Companies in 2009, signed for the loan on their behalf as the authorized principal. Prior to issuing the loan, the Bank received and relied upon the Companies' official resolutions, which established Mr. Smith's exclusive authority to borrow on behalf of the Companies. The Bank also relied on an opinion letter from Ackerman—who had drafted the buy-out agreement and, therefore, knew that petitioner was no longer a co-owner of the Companies—that opined that the borrowers had full authority to execute the terms of the loan.[2]

Mr. Smith died on November 26, 2010. Prior to his death, Mr. Smith had not paid the monies owed to petitioner. Likewise, the loan to the Bank was in default.

Petitioner filed an amended complaint in the Circuit Court of Monroe County against John Doe, as personal representative of the Estate of Warren Smith; Sweet Springs Management, LLC; Sweet Springs Valley Holdings, LLC; Sweetsommer Water Bottling Company, LLC; Smith's Beverage Corporation, Inc.; Ackerman; and the Bank. As against Ackerman and the Bank, respondents herein, petitioner alleged negligence, fraud and aiding and abetting fraud, tortious interference, and civil conspiracy. He also alleged a claim of breach of fiduciary duty against Ackerman.

The Bank and Ackerman filed motions for summary judgment against petitioner. Separate hearings were conducted on their respective motions and, by orders entered August 27,

---

[1] It is unclear when petitioner became aware of the 2009 loan. In his brief, he states that it was not "until a significant time after it had closed."

[2] Furthermore, at least one Bank official testified that, based upon conversations with Mr. Smith, he believed the debts had been paid at the time the 2009 loan was made.

2014, the circuit court granted summary judgment in their favor.[3] This appeal followed.

This Court's standard of reviewing circuit court's orders granting summary judgment is de novo. Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Furthermore,

> "[a] motion for summary judgment should be granted if the pleadings, exhibits and discovery depositions upon which the motion is submitted for decision disclose that the case involves no genuine issue as to any material fact and that the party who made the motion is entitled to a judgment as a matter of law." Syl. pt. 5, *Wilkinson v. Searls,* 155 W.Va. 475, 184 S.E.2d 735 (1971).

*Finch v. Inspectech, LLC*, 229 W.Va. 147, 152-53, 727 S.E.2d 823, 828-29 (2012). *See* W.Va. R. Civ. P. 56(c).

In his first assignment of error, petitioner argues that the circuit court erred in concluding that, under the specific facts of this case, the Bank owed no duty of care to petitioner that required it to notify him of the $2,000,000 loan. Petitioner argues that, based upon the fact that he co-owned the Companies that borrowed $500,000 from the Bank in 2007 and that he was a guarantor on that loan, he had a "contractual business relationship" with the Bank that predated the $2,000,000 loan such that the Bank had a duty to notify him that his rights under the 2007 loan agreement would be adversely affected by the subsequent loan and execution of a deed of trust on the Sweet Springs Resort property. Alternatively, petitioner argues that, absent a contractual business relationship, he had a "special relationship" with the Bank that required it to notify petitioner of the 2009 loan prior to its closing. *See White v. AAMG Const. Lending Ctr.,* 226 W.Va. 339, 700 S.E.2d 791 (2010).

In contrast, the Bank argues that it had no contractual business relationship with petitioner either before or at the time of the 2009 loan that would have required it to notify petitioner of that transaction prior to closing. Although petitioner was a personal guarantor on the 2007 loan, he was not a borrower and did not otherwise have a customer relationship with the Bank. Rather, the Bank argues, petitioner simply signed the guaranty in his capacity as a co-owner of the Companies that obtained the loan. Shortly thereafter, petitioner entered into the buy-out agreement, pursuant to which all of his legal interest in the Companies was conveyed to Mr. Smith. Also pursuant to the buy-out agreement, petitioner became one of Mr. Smith's creditors and, although petitioner had the right and opportunity under the agreement to record a deed of trust to secure his interests, he failed to do so. As a result, petitioner remained an unsecured creditor. The Bank contends that, given these facts, it did not owe petitioner a legally-recognized duty of care requiring it to notify petitioner of the loan prior to its closing. Finally, the Bank argues that there was no "special relationship" between it and petitioner.

Upon de novo review, we find that the circuit court did not err in concluding that petitioner failed to prove, as a matter of law, that the Bank owed him a legally-recognized duty of care under the circumstances. *See* Syl. Pt. 5, in part, *Aikens v. Debow*, 208 W.Va. 486, 541

---

[3] The status of the remaining claims against the remaining defendants is unclear; they are not parties to the present appeal.

S.E.2d 576 (2000) (holding that "the determination of whether a plaintiff is owed a duty of care by a defendant must be rendered by the court as a matter of law"). Viewing the evidence in the light most favorable to the petitioner, it is clear that the circuit court correctly concluded that petitioner's status as a guarantor on a prior loan does not establish a contractual relationship with the Bank. Indeed, petitioner cites no West Virginia authority in support of its position that a duty existed under such circumstances. Furthermore, even *if* such a relationship existed here, it ceased when the 2007 loan was terminated and petitioner's obligation as a personal guarantor was released. As concluded by the circuit court, "'[a]bsent direct contact, a bank owes no duty to third parties to investigate the activities or underlying transactions of its customers or to protect third parties from a fraud by one of its customers.'" *Cf. Peters v. Peters*, 191 W.Va. 56, 61, 443 S.E.2d 213, 218 (1994) (stating that "there exists no West Virginia law requiring a bank to inquire of or inform one joint depositor about the action of another joint depositor.").

Petitioner's alternative theory that, absent a contractual relationship, he had a "special relationship" with the Bank that imposed upon it a duty of care in this case is also unavailing. Whether such a special relationship exists is determined by the circuit court, as a matter of law, under the following guidelines:

> The existence of a special relationship will be determined largely by the extent to which the particular plaintiff is affected differently from society in general. It may be evident from the defendant's knowledge or specific reason to know of the potential consequences of the wrongdoing, the persons likely to be injured, and the damages likely to be suffered. Such special relationship may be proven through evidence of foreseeability of the nature of the harm to be suffered by the particular plaintiff or an identifiable class and can arise from contractual privity or other close nexus.

*White,* 226 W.Va. at 347, 700 S.E.2d at 799. Declaring that there is no "black-letter rule" for when a special relationship exists because attempting to "specifically define the parameters of circumstances which may be held to establish a 'special relationship' would create more confusion than clarity[,]" this Court has determined that the existence of a special relationship between parties "will differ depending upon the facts of each relationship[.]"*Aikens,* 208 W.Va. at 500, 541 S.E.2d at 590.

In this case, we agree with the circuit court that the facts herein do not meet the special relationship test set forth above. Petitioner's injury resulting from Mr. Smith's failure to repay his debt to petitioner was caused not by the 2009 loan, but by Mr. Smith's breach of the 2007 private buy-out agreement (to which the Bank was not a party). Nothing in the buy-out agreement required the Bank to notify petitioner before making the 2009 loan even though the agreement anticipated that the Companies would take out a loan similar to the one at issue. Thus, the Bank's failure to notify petitioner of the loan did not affect him differently from society in general. *See White*, 226 W.Va. at 347, 700 S.E.2d at 799. Furthermore, given that the 2009 loan did not indicate that it could impact petitioner, the Bank neither knew nor should have known of the potential consequences that petitioner might suffer if it failed to notify him of the 2009 loan. *See Id.* Finally, the circuit court correctly concluded that it was not reasonably foreseeable that petitioner would suffer harm as a result of the loan (or the lack of notice thereof) because

4

petitioner was no longer a co-owner of the Companies that took out the loan. Therefore, the circuit court did not err in concluding that petitioner and the Bank did not have a "special relationship" in this case that would have imposed a duty of care upon the Bank.

In his second assignment of error, petitioner argues that the circuit court erred in concluding that there was no intentional act of tortious interference by the Bank in loaning Mr. Smith $2,000,000 and securing a deed of trust on the Sweet Springs Resort property, while also intentionally excluding petitioner, causing him to lose his right to $1,200,000 and a priority position deed of trust on the property. Petitioner argues that Bank officials were aware of the buy-out agreement but failed to review its terms and that, had they actually reviewed the agreement, the 2009 loan would not have been approved. Petitioner further argues that the Bank was also aware that Mr. Smith owed petitioner substantial amounts of money as a result of his investments in the Sweet Springs Resort. Petitioner contends that, despite this knowledge, the Bank entered into the 2009 loan with Mr. Smith to the detriment of petitioner.

> To establish prima facie proof of tortious interference, a plaintiff must show:
>
> (1) existence of a contractual or business relationship or expectancy;
> (2) an intentional act of interference by a party outside that relationship or expectancy;
> (3) proof that the interference caused the harm sustained; and
> (4) damages.
>
> If a plaintiff makes a prima facie case, a defendant may prove justification or privilege, affirmative defenses. Defendants are not liable for interference that is negligent rather than intentional, or if they show defenses of legitimate competition between plaintiff and themselves, their financial interest in the induced party's business, their responsibility for another's welfare, their intention to influence another's business policies in which they have an interest, their giving of honest, truthful requested advice, or other factors that show the interference was proper.

Syl. Pt. 2, *Torbett v. Wheeling Dollar Sav. & Trust Co.*, 173 W.Va. 210, 314 S.E.2d 166 (1983).

Upon de novo review, we conclude that the circuit court did not commit error in granting summary judgment in favor of the Bank on petitioner's tortious interference claim. Petitioner failed to prove either that the Bank intentionally interfered with petitioner's rights under the buy-out agreement by closing the $2,000,000 loan and executing a deed of trust on the Sweet Springs Resort property, or that this alleged interference was the cause of petitioner's economic harm. Notwithstanding petitioner's argument to the contrary, it was Mr. Smith's failure to pay his debt to petitioner (as well as petitioner's own failure to record a deed of trust on the subject property to secure his interests more than two years earlier) rather than any "interference" by the Bank that caused petitioner economic harm. Therefore, we conclude that the circuit court did not err in granting the Bank's motion for summary judgment on petitioner's claim for tortious interference.

In his next assignment of error, petitioner argues that the circuit court erred in granting

summary judgment as to his claim for civil conspiracy because the evidence showed that petitioner was harmed by the concerted actions of Mr. Smith, the Bank, and Ackerman.

> A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff.

Syl. Pt. 8, *Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255 (2009). *See Id*. at 56, 253 S.E.2d at 689 (stating that "[a]t its most fundamental level, a 'civil conspiracy' is 'a combination to commit a tort.' *State ex rel. Myers v. Wood,* 154 W.Va. 431, 442, 175 S.E.2d 637, 645 (1970).").

As evidence of concerted action in this case, petitioner contends that Ackerman drafted the buy-out agreement; that the agreement was signed in his office; and that he also drafted the opinion letter that assisted Mr. Smith in obtaining the $2,000,000 loan in 2009, which, according to petitioner, "he likely did because Ackerman and Smith were friends and Ackerman wanted to assist him." Petitioner argues that the evidence showed that Ackerman advised Bank officials that he could not perform a deed of trust and title examination or travel to West Virginia "presumably because he was not a West Virginia lawyer."[4] Petitioner asserts that "[a]ll parties were involved to a certain extent[,]" but that the substance of the conversations "will never be known since Warren Smith is deceased." Thus, petitioner argues, without the concerted action of Ackerman, the Bank, and Mr. Smith, petitioner "would own Sweet Springs or would have been paid 1.2 million dollars."

The circuit court concluded that petitioner failed to provide substantial evidence of a conspiracy relationship and that summary judgment was appropriate. *See Politino v. Azzon, Inc.*, 212 W.Va. 200, 569 S.E.2d 447 (2002). We agree. Viewing the evidence in the light most favorable to petitioner, it is clear that petitioner's vague allegations and presumptions failed to demonstrate that Bank officials, Ackerman, and Mr. Smith acted in concert to deprive petitioner of money owed to him by Mr. Smith. Because we find that there is no competent evidence to sustain petitioner's claim for civil conspiracy, we conclude that the circuit court did not err in granting summary judgment on this issue.

In his fourth assignment of error, petitioner argues that the circuit court erred in granting summary judgment on his claim against the Bank for aiding and abetting tortious conduct, fraud, and breach of contract by assisting Mr. Smith and his legal entities in damaging petitioner. In syllabus point five of *Courtney v. Courtney*, this Court held that

---

[4] Ackerman admitted that he is not licensed to practice law in West Virginia and, for that reason, advised petitioner and Mr. Smith that a West Virginia-licensed attorney would have to prepare the deed of trust provided for in the buy-out agreement. It is unclear from the briefs and record on appeal why petitioner never ensured that a deed of trust on the Sweet Springs Resort property was prepared and recorded so as to protect his interests.

> [f]or harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself.

186 W.Va. 597, 413 S.E.2d 418 (1991). Petitioner argues that, viewing the evidence in the light most favorable to him, the evidence demonstrates that the Bank was aware that Mr. Smith's conduct created a breach of a duty owed to petitioner under the buy-out agreement and that it assisted Mr. Smith in creating that breach. Petitioner argues that the Bank also assisted by proceeding with the $2,000,000 loan without first reviewing the terms of the buy-out agreement. Petitioner contends that the Bank's conduct in this regard caused him financial harm. According to petitioner, at the very least, there is a genuine issue of material fact as to whether the Bank knew that Mr. Smith's conduct breached a duty owed to the petitioner and that, if a duty was found to be breached, "then there can be no doubt that [the Bank] assisted in the closing of the loan [sic]."

Upon de novo review, we find no error by the circuit court in granting summary judgment to the Bank on this issue. It is undisputed that the Bank was not a party to the 2007 private buy-out agreement between petitioner and Mr. Smith, which was executed more than two years before the $2,000,000 loan was made. Petitioner failed to provide competent evidence that, in making the 2009 loan, the Bank knew that Mr. Smith misrepresented in that agreement that he was going to execute a first position deed of trust in favor of petitioner and otherwise repay sums owed to him. Likewise, petitioner failed to demonstrate that the Bank gave Mr. Smith substantial assistance in making the alleged misrepresentations. Therefore, the circuit court did not err in granting summary judgment in favor of the Bank on petitioner's aiding and abetting claim.[5]

In his final assignment of error, petitioner argues that the circuit court erred in granting summary judgment in favor of Ackerman on petitioner's negligence and breach of fiduciary duty claims. Petitioner argues that Ackerman owed him a duty of care based upon the fact that he drafted the buy-out agreement and otherwise represented the Companies petitioner briefly co-owned with Mr. Smith. Petitioner contends that Ackerman was negligent in writing an opinion letter in support of the 2009 loan without mentioning the buy-out agreement and that it was

---

[5] Petitioner also contends that the evidence demonstrated that Ackerman aided and abetted Mr. Smith in breaching a duty owed to petitioner. Petitioner raised this argument in connection with his final assignment of error (discussed below) that the circuit court erred in concluding that Ackerman was neither negligent nor breached a fiduciary duty to petitioner. We note, however, that although alleged in the amended complaint, a review of the record on appeal reveals that the aiding and abetting claim was not raised or addressed by either Ackerman or petitioner in their respective summary judgment pleadings. Consequently, petitioner's aiding and abetting claim against Ackerman was not addressed in the circuit court's August 27, 2014, order granting Ackerman's motion for summary judgment. This Court has oft-cautioned that it "'will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance.' Syllabus Point 2, *Sands v. Security Trust Company,* 143 W.Va. 522, 102 S.E.2d 733 (1958)." *Ways v. Imation Enterprises Corp.*, 214 W.Va. 305, 311, 589 S.E.2d 36, 42 (2003). This assignment of error is, therefore, waived.

foreseeable that petitioner would be financially harmed by the closing of that loan. Petitioner argues that Ackerman breached his fiduciary duty to him for similar reasons. We disagree.

Petitioner's contention that Ackerman owed him a duty—fiduciary or otherwise—is based upon the false premise that Ackerman personally represented petitioner. To the contrary, petitioner does not dispute that Ackerman drafted the buy-out agreement as the attorney for the Companies and that his representation was limited to those Companies; nor does petitioner dispute that, in fact, when petitioner asked Ackerman to take action to enforce the buy-out agreement against the Companies, Ackerman advised him that he could not take such action because, to do so, would be a conflict of interest.

Upon de novo review, we find no error in the circuit court's conclusion that Ackerman was entitled to summary judgment on petitioner's claims of negligence and breach of fiduciary duty. The circuit court correctly concluded that, under Rule 1.13 of the West Virginia Rules of Professional Conduct, "[t]he duty owed by an attorney engaged to represent an organization or entity extends only to that organization or entity, not the constituents thereof." Under Rule 1.13(g), "[a] lawyer representing an organization may also represent any of the directors, officers, employees, members, shareholders or other constituents subject to the provisions of Rule 1.7 [regarding conflict of interest]." *Id.*, in relevant part. The circuit court also correctly observed that, while such dual representation is permissible where the constituent's "interests are congruous with those of the organization or entity, such representation of constituents is not permissible when the interests of the constituents diverge from those of the organization or entity." *See State ex rel. Morgan Stanley & Co., Inc. v. MacQueen*, 187 W.Va. 97, 416 S.E.2d 55 (1992). Ackerman was engaged to represent the Companies exclusively; petitioner failed to demonstrate that Ackerman's services extended to or created a de facto individual representation of petitioner. Accordingly, we conclude that Ackerman owed petitioner no duty under the particular facts of this case and that Ackerman's motion for summary judgment as to petitioner's claims for negligence and breach of fiduciary duty were properly granted.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 22, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Justice Robin Jean Davis

8